383 P.2d 571

**A. W. JONES, Plaintiff-Appellant,**

**v.**

**INTERNATIONAL UNION OF OPERATING ENGINEERS, International Union of Operating Engineers Local No. 876, Continental Oil Company, a corporation, D. A. Brazzel, C. L. McMillan and E. E. Gillespie, Defendants-Appellees.**

No. 7215.

Supreme Court of New Mexico.

June 24, 1963.

Poole & Poole, Albuquerque, for appellant.

Neal & Fort, Carlsbad, Kellahin & Fox, Santa Fe, Myer Rosenberg, Carlsbad, Gordon H. Mayberry, Denver, Colo., for appellees.

NOBLE, Justice.

A. W. Jones, a former employee of Continental Oil Company, (hereafter termed "Conoco") was discharged following his refusal to sign a written statement as to a pre-existing eye injury and agreement that he was only qualified to work in the classification of yardman. He sued Conoco and his union, International Union of Operating Engineers Local No. 876, (hereafter referred to as "Local No. 876"); International Union of Operating Engineers, (hereafter referred to as "International"), parent labor organization of Local No. 876; and certain officers of Conoco and the unions. The action seeks damages against Conoco for a claimed wrongful discharge and against the union because of plaintiff's charge that it arbitrarily, fraudulently, in bad faith and in violation of its trust as sole bargaining agent, refused to demand that plaintiff's grievance be submitted to arbitration. Plaintiff also charges a conspiracy between certain officials of Conoco and the unions to prevent plaintiff from securing his rights. The district court sustained motions to dismiss the complaint for failure to state grounds for relief. This

appeal is from the order dismissing the complaint with prejudice. The questions presented by this appeal are of first impression in New Mexico. We have not been referred to, nor have we found any case involving a labor contract just like the one in this case.

The defendants filed separate but identical motions to dismiss, generally upon the ground of failure to state a cause of action because, (1) the employer's common-law right to discharge an employee at will was not restricted by the collective bargaining agreement; (2) no right to arbitration was pled; and (3) New Mexico Statutes authorize an employer to discharge for failure of the employee to give a demanded statement of prior disability. The motion also asserts that no facts are alleged upon which the conspiracy count may be founded.

Defendants rest their position in support of the dismissal of the complaint upon three contentions: (1) that Conoco's right to discharge is not restricted by the labor agreement; (2) that the collective bargaining agreement contains no provision for arbitration of an employee's grievance; and (3) that a conspiracy is not charged.

■ Since the dismissal of the complaint was for failure to state a cause of action, there are no facts except as alleged in the complaint. In considering whether a complaint states a cause of action, we, of course, accept as true all facts well pleaded. Jernigan v. New Amsterdam Casualty Co., 69 N.M. 336, 367 P.2d 519. A motion to dismiss under Rule 12(b)(6) is properly granted only when it appears that plaintiff cannot recover or be entitled to relief under any state of facts provable under the claim. Jernigan v. New Amsterdam Casualty Co., supra; Chavez v. Sedillo, 59 N.M. 357, 284 P.2d 1026; Adams v. Cox, 52 N.M. 56, 191 P.2d 352; Ritter v. Albuquerque Gas & Electric Co., 47 N.M. 329, 142 P.2d 919, 153 A.L.R. 273.

Conoco and Gillespie agree that the motion admits all facts well pleaded and that this includes: (1) plaintiff's employment by Conoco; (2) membership in defendant union; (3) the collective bargaining agreement; and (4) that Conoco discharged plaintiff without just cause. The union defendants deny any obligation to submit plaintiff's grievance to arbitration.

■ The admission that the complaint alleges plaintiff's discharge without just cause and the assertion that the labor agreement provides no method of arbitration of an employee's grievance, requires an examination of the collective bargaining agreement. Having grounded his action upon an alleged breach of the collective bargaining agreement, and attached a copy thereof to the complaint, plaintiff's right to recover is measured by the terms and conditions of that agreement. Garbutt v. Blanding Mines Co., (10th Cir., 1944), 141 F.2d 679.

■ The contract, in this instance, is one between the employer and the union as sole bargaining representative for all of Conoco's employees as authorized by the National Labor Relations Act. The fact that plaintiff was not a party to the collective bargaining agreement at once raises the question of whether he may enforce its terms. It is conceded that no express right of enforcement is provided by the agreement.

As stated by Professor Summers in his article, "Individual Rights in Collective Agreements and Arbitration," 37 N.Y.Univ. L.Rev. 362:

> "State courts have been confronted with the problem of the rights of individuals under the collective agreement in a substantial number of cases, but no settled body of law has developed."

The cases are collected and analyzed in various law review articles. See 13 Rutgers L.Rev. 631; 69 Har.L.Rev. 601; 45 Cornell L.Q. 25; 8 Lab.L.J. 316; 9 Buffalo L.Rev. 239. See, also, Jenkins v. Wm. Schluderberg-T. J. Kurdle Co., 217 Md. 556, 144 A.2d 88, where, after discussing three of the views allowing an individual employee to sue for breach of a collective bargaining agreement, under certain conditions, it was said:

> "Writing specifically with regard to discharge cases, Professor Cox has stated, 'The great weight of authority sustains the individual's right of action.' 'Rights under a Labor Agreement', 69 Harv.L.Rev. 601, 647 (1956). And see cases cited in Annot. 18 A.L. R.2d 352, 367 (1951). See, also, Association of Westinghouse Salaried Employees v. Westinghouse Elec. Corp., 348 U.S. 437, 75 S.Ct. 489, 99 L.Ed. 510."

The weight of the modern view is that an individual employee may enforce a collective labor agreement between the union, as bargaining representative, and the employer, insofar as it embodies rights inserted therein for the employee's benefit as contrasted to those for the benefit of the union. This view is usually rested either upon the ground that the employee is a third-party beneficiary or that the contracting union acted as his agent. Annotation, 18 A.L.R.2d 352, 361; Pattenge v. Wagner Iron Works, 275 Wis. 495, 82 N. W.2d 172; Association of Westinghouse Salaried Employees v. Westinghouse Elec. Corp., 348 U.S. 437, 460, 75 S.Ct. 488, 99 L.Ed. 510; Hudak v. Hornell Industries, 304 N.Y. 207, 214, 106 N.E.2d 609; Huston v. Washington Wood & Coal Co., 4 Wash. 2d 449, 103 P.2d 1095.

The general rule is, however, that an individual employee must show that he has exhausted the grievance procedures provided by the agreement as a condition to his right to maintain an action in court. Jenkins v. Wm. Schluderberg-T. J. Kurdle

Co., supra; Cone v. Union Oil Co., 129 Cal.App.2d 558, 564, 277 P.2d 464, 468; Cox, "Individual Enforcement of Collective Bargaining Agreements," 8 Lab.L.J. 850. See also 50 Columbia L.Rev. 731; 11 U.Pitt.L.Rev. 35; 3 Mo.L.Rev. 252; 50 N.W.U.L.Rev. 143; 3 Buffalo L.Rev. 270; 1949 Wis.L.Rev. 154.

█ Because the grievance in this case is the alleged wrongful discharge, it follows that if Conoco had an unrestricted right of discharge, plaintiff has no claim against either Conoco or Local No. 876. Our first inquiry, therefore, concerns Conoco's right of discharge. Conoco had a common-law right to discharge an employee at any time and whether for just cause or not, unless that right is restricted by the agreement. Odell v. Humble Oil & Refining Co., (10th Cir., 1953), 201 F.2d 123, 128; United States Steel Corp. v. Nichols, (6th Cir., 1956), 229 F.2d 396, 399, 56 A.L.R.2d 980. Plaintiff does not quarrel with that position but asserts that the collective agreement limited Conoco's right to discharge except for just cause.

█ The collective bargaining agreement in this case does not contain an express, affirmative statement limiting the employer's right to discharge for just cause. Defendants insist that Article XV of the written agreement establishes the employer's rights and liabilities and contains no limitation on the right to discharge. The pertinent portion of that provision reads:

*"Responsibility of the Company:* The right to hire and to maintain order and efficiency is the responsibility solely of the Company.

"The right to promote, discipline and discharge are likewise the responsibility solely of the Company, provided that claims of discriminatory promotions and of wrongful or unjust discipline or discharges shall be subject to settlement as provided in Article XIII."

It is generally recognized that collective bargaining agreements possess special characteristics which differ from the usual commercial contract. It is said in a law review article by Jay, "Arbitration and the Federal Common Law of Collective Bargaining Agreements," 37 N.Y.Univ.L. Rev. 448, 462, regarding the proper construction of such agreements:

"These special characteristics of the collective bargaining contract render traditional contractual theories inadequate as a basis for a theory of labor contracts. Indeed, mechanical application of traditional contract principles in the evolution of the common law of labor contracts without regard to their peculiarities may result in serious incongruities. This does not mean that traditional contract principles have no place in the interpretation of labor agreements. The vast body of judicial decisions cannot be lightly ignored.

They must be examined to determine what rules will best effectuate the federal policy underlying the common law of labor contracts in view of their special nature."

See also United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409; Stone, Labor Management Contracts at Work, pp. 4–5. (Harper & Bros., 1961); 72 Har.L.Rev. 1482, 1483.

Defendants insist that the express enumeration of the company's exclusive and sole right to discharge is the pivotal point in determining the rights of the parties. They ground their position that the agreement does not limit the company's common-law right of discharge, upon that portion reserving to the company the sole right to discharge. It is said that the language of the agreement, "provided that claims * * of wrongful or unjust * * * discharges shall be subject to settlement as provided in Article XIII," is not a limitation on the right of discharge. All that means, they say, is that it merely gives the individual employee a right to press his claim of unjust discharge through the grievance procedure, because without it there would be no grievance arising under the contract. We cannot agree. We find in the language of the agreement no intention that an individual employee be merely granted the right to invoke an empty grievance procedure under circumstances in which he has no contractual right. As we view the agreement, the parties expressed the plain intention that the employer should have the complete right to hire, to fire and to discipline its employees, except that it may not wrongfully or unjustly discharge an employee. To construe the language otherwise, we think, would fail to give effect to the plain meaning expressed by the parties. We conclude that the agreement in this case prohibits the wrongful or unjust discharge of an employee. This appeal, of course, does not call upon us to determine what is or is not a just or an unjust cause for discharge, but only whether the agreement contains a "just cause" clause.

Having determined that the agreement does contain a "just cause" discharge clause, we are next confronted with the problem of the grievance procedure and whether the individual employee may sue the employer for a wrongful discharge and his union for its failure to fully prosecute his individual grievance through every step of the procedure provided by the labor agreement. The answer depends upon the purpose and nature of the collective bargaining agreement, and upon its terms and conditions.

The pertinent portion of Article XIV of the agreement respecting arbitration is:

"Arbitration: Only differences arising between the Company and the Union involving the interpretation or

performance of this written agreement which cannot be adjusted through the grievance procedure in Article XIII, shall upon written notice by one party to the other be referred to arbitration. Such notice shall be given within forty-five (45) days of the date of the Regional Manager's decision. * * * "

As in Jernigan v. New Amsterdam Casualty Co., 69 N.M. 336, 367 P.2d 519, the question presented by the pleadings is whether the terms of the collective bargaining agreement are clear or whether an uncertainty or ambiguity exists. Where an uncertainty or ambiguity is present, the intent of the parties may be ascertained from the language and conduct of the parties, the objects sought to be accomplished and the surrounding circumstances at the time. " * * * the question whether an ambiguity or uncertainty exists is one of law." There were only two parties to the contract in Jernigan. In the instant case the employees, while not parties, have an interest in the agreement. Where others than the parties have an interest in the agreement, neither what the parties say they intended, nor what they subsequently agree it means, is controlling. Food Fair Stores, Inc. v. Raynor, 220 Md. 501, 154 A.2d 814.

A reading of the agreement in this case discloses that participation by an employee in a personal grievance against the employer is limited by Article XIII to a complaint to the employee's immediate foreman. Thereafter, successive steps in the procedure may only be taken by appropriate union committees. There has always been trouble with tripartite relationships and the labor field has additional complications. The parties affected are the union, the employer, and individual employees, many of whom have conflicting interests. Collective labor contracts, where the union is the sole representative, as here, generally provide that grievance procedures are union controlled and that the individual employee is to be represented by the union under its fiduciary capacity as the bargaining agent. Regarding construction of such procedures in labor agreements, Cox, in his article, "Rights Under a Labor Agreement," 69 Har.L.Rev. 601, at 619, had this to say:

"Unless a contrary intention is manifest, the employer's obligations under a collective bargaining agreement which contains a grievance procedure controlled by the union shall be deemed to run solely to the union as the bargaining representative, to be administered by the union in accordance with its fiduciary duties to employees in the bargaining unit. The representative can enforce the claim. It can make reasonable, binding compromises. It is liable for breaches of trust in a suit by the employee beneficiaries."

The Supreme Court of the United States in United Steelworkers of America v. War-

rior & Gulf Navigation Co., supra, quoted the following from Cox, "Reflections Upon Labor Arbitration," 72 Har.L.Rev. 1482:

> " * * * [I]t is not unqualifiedly true that a collective-bargaining agreement is simply a document by which the union and the employees have imposed upon management limited, express restrictions of its otherwise absolute right to manage the enterprise, so that an employee's claim must fail unless he can point to a specific contract provision upon which the claim is founded. There are too many people, too many problems, too many unforseeable contingencies to make the words of the contract the exclusive source of rights and duties. One cannot reduce all the rules governing a community like an industrial plant to fifteen or even fifty pages. Within the sphere of collective bargaining, the institutional characteristics and the governmental nature of the collective-bargaining process demand a common law of the shop which implements and furnishes the context of the agreement. We must assume that intelligent negotiators acknowledge so plain a need unless they stated a contrary rule in plain words."

As the exclusive bargaining agent of the employees at Conoco, Local 876, its officers and agents were under a duty to fairly represent those employees. Ferro v. Railway Express Agency, Inc., (2nd Cir., 1961), 296 F.2d 847. The duty does not end at the bargaining table but extends throughout the contract, and, among other things, it involves a day-to-day adjustment of working rules and the protection of employee's rights secured by the contract. Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80.

It is true that the collective bargaining agreement does not expressly state that arbitration is a step in the procedure where the grievance is that of the individual employee against the company. We think, however, when the whole agreement is read together, it is clear that arbitration is available to the union as a final step in its representation of an employee's grievance against the company. All grievance procedures subsequent to the first complaint by an employee to his immediate supervisor is a step in the procedure. Upon dissatisfaction by the union of his ruling, the agreement provides for arbitration of any question involving the interpretation or performance of the written agreement. It seems clear to us that if the union believes the disposition of the employee's claim by the regional supervisor results in a difference between it and the company involving interpretation or performance of the contract, it may demand arbitration within the language of Article XIV. See Jenkins v. Schluderberg-T. J. Kurdle Co., supra, (217 Md. 556, 144 A.2d 88).

At the conclusion of his article, entitled "Reason, Contract and Law in Labor Relations," 68 Har.L.Rev. 999 at 1024, the late Dean Shulman of the Yale Law School stressed the importance of self-government and of arbitration as a part thereof in labor relations, saying:

"The arbitration is an integral part of the system of self-government. And the system is designed to aid management in its quest for efficiency, to assist union leadership in its participation in the enterprise, and to secure justice for the employees. It is a means of making collective bargaining work * * *"

A collective bargaining agreement should be held to include the right to arbitrate a specific grievance not expressly excluded by its terms, and doubt should be resolved in favor of arbitration. See United Steelworkers of America v. Warrior & Gulf Navigation Co., supra.

The union has great discretion in handling the claims of its members, and in determining whether there is merit to such claim which warrants the union's pressing the claim through all of the grievance procedures, including arbitration, and the courts will interfere with the union's decision not to present an employee's grievance only in extreme cases. It has been said by some courts, and by eminent scholars of labor law, that the union ought to be liable to a member for its arbitrary or bad faith action in representing or failing to represent a member against his employer. Fray v. Amalgamated Meat Cutters, 9 Wis.2d 631, 101 N.W.2d 782; Zdero v. Briggs Mfg. Co., 338 Mich. 549, 61 N.W.2d 615; Jenkins v. Wm. Schluderberg-T. J. Kurdle Co., supra; 69 Har.L.Rev. 601; 8 Lab.L.J. 850; Cortez v. Ford Motor Co., 349 Mich. 108, 84 N.W.2d 523.

It has been said that the grievance procedures provided by a collective bargaining agreement should be a bar to suits by individual employees against the employer for an alleged violation of the agreement, but that such suits are not barred if the union acted arbitrarily, fraudulently, and in bad faith in failing to press the employee's grievance through all of the procedure provided by the agreement. Jenkins v. Schluderberg-T. J. Kurdle Co., supra; United States v. Voges, D.C., 124 F.Supp. 543; Ostrofsky v. United Steelworkers of America, 171 F.Supp. 782, 273 F.2d 614, (4th Cir., 1960), cert. denied, 363 U.S. 849, 80 S.Ct. 1628, 4 L.Ed.2d 1732.

The question before us upon the pleadings alone is whether the employee is barred from redress in the courts for his alleged wrongful discharge because of the union's refusal to require arbitration of the grievance, notwithstanding the fact that the union's refusal is due to conduct, which upon the pleadings before us must be taken as

arbitrary, in bad faith and contrary to its trust. As heretofore pointed out, we are not, at this time, concerned with, nor is there proof of any of the allegations. With the admission that the complaint charges a discharge without just cause; that all remedies available to the employee under the collective bargaining agreement were exhausted; and, that Local 876 arbitrarily, in bad faith and in violation of its trust refused to press plaintiff's grievance to arbitration, we conclude that the complaint states a cause of action against Conoco and Local No. 876.

 Count 5 of the complaint charges the defendants, International, Local No. 876, Conoco, D. A. Brazzel, C. L. McMillan and E. E. Gillespie with combining and acting in concert to deprive plaintiff of his right to work and of his rights under the collective bargaining agreement by inducing Local No. 876 to refuse to prosecute plaintiff's grievance through arbitration. We think the trial court properly dismissed this count of the complaint. It charges a civil conspiracy which is not of itself actionable. Armijo v. National Surety Corp., 58 N.M. 166, 268 P.2d 339.

Counts 6 and 7 of the complaint charge the defendants Brazzel and Mc-Millan with interfering with plaintiff by inducing Local No. 876 not to prosecute his grievance through arbitration. A ground

for relief is charged in these counts. Wolf v. Perry, 65 N.M. 457, 339 P.2d 679.

It follows that the order dismissing count 5 of the complaint should be affirmed and that otherwise the order appealed from should be reversed and the cause remanded to the district court with instructions to reinstate the cause on the docket and proceed in a manner not inconsistent with this opinion.

It is so ordered.

CHAVEZ and MOISE, JJ., concur.