583 P.2d 476

**Alicia GUTIERREZ, Plaintiff-Appellant,**

v.

**ARTESIA PUBLIC SCHOOLS and Travelers Insurance Company, Insurer, Defendants-Appellees.**

**No. 3327.**

Court of Appeals of New Mexico.

Aug. 15, 1978.

John E. Brooks, Albuquerque, for appellant.

Charles A. Pharris, Keleher & McLeod, P. A., Albuquerque, for appellees.

## OPINION

SUTIN, Judge.

Plaintiff sued defendants to recover workmen's compensation benefits that arose out of the murder of plaintiff's husband on the premises of the Hermosa School in Artesia, New Mexico. Judgment was entered for defendants and plaintiff appeals. We affirm.

The trial court found that decedent died as a result of gunshot wounds inflicted by Isuaro Gonzales (Sonny) on October 1, 1975. The shooting took place on the premises of the Artesia Public Schools, specifically Hermosa School. Sonny went to the Hermosa School only for the purpose of finding decedent. His motives for shooting decedent were purely private and bore no relation to decedent's employment. The fact of decedent's employment and the duties thereof did not contribute to the hazard or danger of decedent being shot to death by Sonny. Decedent's death did not arise out of, was not incident to, and did not occur in the course of his employment.

The parties stipulated that decedent sustained an accidental injury from the gunshot wound which led to his death even though the shooting was purposeful and intentional. From decedent's standpoint, it was an accidental injury.

The evidence most favorable to defendants shows:

Decedent was director of bilingual programs in the Artesia Public Schools and appeared at the Hermosa School when called by the principal. Della Gonzales (Della), the wife of Sonny, taught at the Hermosa School. The Gutierrezes and the Gonzaleses were very close friends. They visited at each other's homes two or three times a week and maintained a friendly relationship. A week prior to the shooting, decedent and Della went to Las Cruces on a work related trip. Della denied that any illicit conduct occurred on this trip. Sonny became suspicious and questioned her on Sunday before the shooting that took place the following Wednesday. Della confessed to two acts of sexual intercourse with decedent in decedent's office located in a public school other than Hermosa. These acts occurred several months prior to this occasion. The following day, Sonny told decedent to leave town and decedent agreed. Sonny also told plaintiff that if he ever caught decedent with Della again, he would kill him.

On Wednesday morning, October 1, Della was on sick leave. Decedent had been engaged as a substitute teacher. He was required to be at school at 8:30 a. m., but his teaching would begin at 8:55 a. m. At about 8:30 a. m. Sonny went to the Hermosa School and met decedent in the hallway. Sonny and decedent went into an office to be used by decedent, and Sonny asked decedent when he would leave town. Decedent said he planned to leave but nothing yet had been done. Decedent laughed and Sonny shot and killed him.

The only motivation for Sonny killing decedent was his knowledge of the sexual relationship between decedent and Della.

Sonny pled guilty to second degree murder and was sentenced to 10 to 50 years in the state penitentiary.

Plaintiff contends that decedent sustained an accidental injury arising out of and in the course of his employment and that the accident was reasonably incident to his employment. Section 59–10–13.3, N.M.S.A.1953 (2d Repl. Vol. 9, pt. 1).

This case is a matter of first impression in New Mexico. Heretofore, it has been held that where one employee was killed by a co-employee for unexplained reasons, an issue of fact exists whether decedent's daughter was entitled to workmen's compensation benefits. *Ensley v. Grace*, 76 N.M. 691, 417 P.2d 885 (1966). It has also been held that where one employee was shot by a co-employee, an issue of fact existed whether claimant was entitled to workmen's compensation benefits. *Perez v. Fred Harvey, Inc.*, 54 N.M. 339, 224 P.2d 524 (1950). An issue of fact existed because the relationship of co-employees and the quarrels that arise between them may be reasonably incident to the employment.

We are now confronted with the murder of an employee by a third person for reasons personal to the third person. This is a "risk" personal to the employee. In *Ensley*, Justice Moise pointed out that "risks" personal to a claimant and unrelated to his employment are universally held noncompensable. It was so held in *Berry v. J. C. Penney Co.*, 74 N.M. 484, 394 P.2d 996 (1964).

The facts are undisputed that Sonny went to the Hermosa School for the sole purpose of finding decedent to determine when he would leave Artesia. They did not discuss any matter related to decedent's employment. Sonny shot and killed decedent for purely personal reasons. There was nothing about decedent's employment that created the risk of being shot. The nature of decedent's employment was not such as to invite an assault. This risk became operative by reason of decedent's illicit relationship with Della. If Della had murdered decedent, perhaps an issue of fact would exist whether this accidental injury arose out of and in the course of decedent's employment.

"Course of employment" refers to the time, place and *circumstances* under which the injury occurred. "Arise out of" relates to the *cause* of the injury. Both of these factors must co-exist. One without the other is not enough. *Gough v. Famariss Oil and Refining Company*, 83 N.M. 710, 496 P.2d 1106 (Ct.App.1972); *Walker v. Woldridge*, 58 N.M. 183, 268 P.2d 579 (1954).

The murder occurred at about 8:30 a. m. in the Hermosa School. All of the other circumstances surrounding the killing indicate the decedent was not acting in the course of his employment. Decedent was not teaching a class. He was not at work. He was not fulfilling the duties of his employment or engaged in doing something incidental thereto. *McKinney v. Dorlac*, 48 N.M. 149, 146 P.2d 867 (1944). See *McDonald v. Artesia General Hospital*, 73 N.M. 188, 386 P.2d 708 (1963); *Wilson v. Rowan Drilling Co.*, 55 N.M. 81, 227 P.2d 365 (1950).

We must keep in mind also that while an injury may have arisen out of his employment, it could not be said to have been sustained in the "course of his employment." *Fautheree v. Insulation & Specialties, Inc.*, 67 N.M. 230, 354 P.2d 526 (1960).

Plaintiff relies upon the deposition testimony of the principal of the school. The principal stated that he visited with decedent at 8:20 a. m. When asked whether decedent had started his duties by that time, he answered:

> Well, he started his duties. He was making preparations, but as far as having children in there and teaching them, no, he had not started, because the children were on the playground. They weren't in the building.

Coupled with Sonny's testimony that decedent was in the hall when he met decedent, we find no difficulty in affirming the district court. Decedent was not fulfilling his duties as a substitute teacher and he was doing nothing incidental to his work. Decedent was not injured in the "course of his employment."

■ For an injury to "arise out of" the employment, there must be a showing that *the injury was caused by a risk to which the decedent was subjected by his employment. The employment must contribute something to the hazard, Williams v. City of Gallup,* 77 N.M. 286, 421 P.2d 804 (1966).

A definition of "arise out of," adopted by almost every state in the union and referenced to in *Perez,* supra, comes from an opinion written by Chief Justice Rugg, *In re McNicol,* 215 Mass. 497, 102 N.E. 697, L.R.A. 1916A, 306, 4 N.C.C.A. 522 (1913). An employee was assaulted and killed by an obviously intoxicated fellow workman whose quarrelsome and dangerous disposition when intoxicated was well known to the employer. In holding for claimants, the court said:

> It is sufficient to say that an injury is received "in the course of" the employment when it comes while the workman is doing the duty which he is employed to perform. It arises "out of" the employment, when there is apparent to the rational mind upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises "out of" the employment. But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workmen would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that

source as a rational consequence. [102 N.E. at 697.]

This incisive language should put to rest any quarrel with respect to the meaning of "arise out of." By the application of this rule to the instant case, we cannot fathom any basis for plaintiff's argument that decedent's murder arose out of decedent's employment. Decedent's death cannot be traced to his employment as a contributing proximate cause. Decedent would have been equally exposed apart from the employment. It could have occurred anywhere other than the Hermosa School. The danger was not peculiar to decedent's work or incidental to the school system in Artesia.

■ Apart from Louisiana, the rule is uniform that where an employee's death or resulting injuries is caused by wilful or criminal assault of a third person intending to injure him because of reasons personal to the third person and not for any cause connected with the employee's employment, the injury does not arise out of the employment, and the resulting death or injuries is not compensable. *Freeman v. Callow,* 525 S.W.2d 371 (Mo.App.1975); *Liberty Mutual Insurance Company v. Upton,* 492 S.W.2d 623 (Tex.Civ.App.1973); *Robbins v. Nicholson,* 281 N.C. 234, 188 S.E.2d 350 (1972); *Belden Hotel Company v. Industrial Commission,* 44 Ill.2d 253, 255 N.E.2d 439 (1970); *Wood v. Aetna Casualty & Surety Company,* 116 Ga.App. 284, 157 S.E.2d 60 (1967); *Ellis v. Rose Oil Company of Dixie,* 190 So.2d 450 (Miss.1966); *Devlin v. Ennis,* 77 Idaho 342, 292 P.2d 469 (1956); *Epperson v. Industrial Commission,* 26 Ariz.App. 467, 549 P.2d 247 (1976); 1 Larson's Workmen's Compensation Law; 82 Am.Jur.2d *Workmen's Compensation,* § 329 (1976); 99 C.J.S. Workmen's Compensation § 227 (1958).

Sonny pled guilty to murder. Plaintiff is not entitled to workmen's compensation benefits.

The judgment of the trial court is affirmed.

IT IS SO ORDERED.

HERNANDEZ and LOPEZ, JJ., concur.