645 P.2d 1381

**Guadalupe Garcia HERNANDEZ, Plaintiff-Appellant,**

v.

**HOME EDUCATION LIVELIHOOD PRO-GRAM, INC., a New Mexico corporation, hereinafter referred to as HELP; Jose A. Rivera, Individually and as Executive Director; Rayo Perez, Individually and as an employee; Raul Castro; Tony Bachicha; Pedro Aguilar, Individually and as Officers and Directors of HELP, Defendants-Appellees.**

No. 5329.

Court of Appeals of New Mexico.

April 20, 1982.

Certiorari Denied June 7, 1982.

Sarah M. Singleton, Singleton & Roberts-Hohl, Santa Fe, George Graham, Jr., Graham & Siegenthaler, Artesia, Richard A. Blenden, Blenden & Diamond, Carlsbad, for plaintiff-appellant.

Briggs F. Cheney, Alfred L. Green, Jr., Shaffer, Butt, Thornton & Baehr, P. C., Albuquerque, for defendants-appellees.

## OPINION

WALTERS, Chief Judge.

This is the second appeal[1] by plaintiff Guadalupe Hernandez (Hernandez) from the granting of a summary judgment in favor of defendants Home Education Livelihood Program, Inc., its executive director, an employee, and three officers and directors of the corporation (HELP). We hold that plaintiff's appeal was timely filed and we reverse the summary judgment.

On the evening of June 6, 1978, the executive director of HELP telephoned Hernandez at her home and discharged her from her job. As a result, she alleged that she suffered a mental breakdown and was hospitalized as a result of it. Hernandez's suit claimed that she had been an employee of HELP for thirteen years; she had been promoted from part-time clerk-typist to area supervisor; she had never received a negative evaluation, and her only demotion had been at her request. She admitted that during her employment she had suffered from a mental condition known to defendants which at times had required hospitalization and treatment. In Count I Hernandez alleged that she was discharged in violation of HELP policies and sought damages for loss of employment and employment capability; and for physical, mental and emotional distress, discomfort, embarassment, and humiliation. In Count II, Hernandez requested punitive damages, alleging that defendants intentionally inflicted emotional distress in their manner of firing her.

The trial court dismissed both counts of the complaint, ruling that plaintiff's remedies were limited to those provided by the New Mexico Workmen's Compensation Act.

1. *Timeliness of the Appeal.*

On June 16, 1981, the trial judge filed an order entitled "Order Granting Summary Judgment," which he sent to counsel for both parties with a letter stating the following:

Enclosed you will find the Court's Findings of Fact and Conclusions of Law and in accordance therewith, I would appreciate Defense Counsel preparing Order Granting Summary Judgment and/or Dismissal * * * and submit same to the Court for execution and filing.

Defendants prepared a "Summary Judgment Order" which was filed on July 27, 1981. Hernandez's notice of appeal was filed on August 13, 1981.

HELP characterizes the order filed on June 16, 1981, as a final order and argues that plaintiff's appeal was not timely under § 39-3-2, N.M.S.A.1978, and N.M.R.Civ. App. 3, N.M.S.A.1978. Since the order of July 27, 1981, does no more than restate the contents of the June order, HELP urges this court to hold that the time of review began to run from the date of the original order. They cite *Rice v. Gonzales*, 79 N.M. 377, 444 P.2d 288 (1968), to support their argument.

The record plainly shows that all parties and the court considered the court's June "Order" a non-final order. The judge specifically referred to it as "Findings of Fact and Conclusions of Law," and defendants prepared a "Summary Judgment Order," pursuant to the judge's instructions. The Notice of Appeal was filed less than thirty days after the entry of the July 27, 1981 judgment. The appeal was timely filed.

2. *Plaintiff's remedies.*

The trial court in its Summary Judgment Order held that plaintiff's exclusive remedy was that provided under the Workmen's Compensation Act and that it, therefore, lacked subject matter jurisdiction. Her complaint was dismissed with prejudice.

---

1. In *Hernandez v. Home Ed. Livelihood Program Inc.*, 95 N.M. 281, 620 P.2d 1306 (Ct.App. 1980), this court reversed the trial judge's order granting a summary judgment based on plaintiff's failure to exhaust her administrative remedies.

The exclusivity provision of the Workmen's Compensation Act is found at § 52–1–9, N.M.S.A.1978, which reads as follows:

52–1–9. Right to compensation; exclusive.

The right to the compensation provided for in this act [52–1–1 to 52–1–69 NMSA, 1978], in lieu of any other liability whatsoever, to any and all persons whomsoever, for any personal injury accidentally sustained or death resulting therefrom, shall obtain in all cases where the following conditions occur:

A. at the time of the accident, the employer had complied with the provisions thereof regarding insurance;

B. at the time of the accident, the employee is performing service arising out of and in the course of his employment; and

C. the injury or death is proximately caused by accident arising out of and in the course of his employment and is not intentionally self-inflicted.

No one argues that HELP had not complied with Subsection A. The issues raised are whether Hernandez sustained a personal injury that was (1) accidental; (2) personal; and that (3) arose out of, and (4) in the course of her employment, in order to bring her cause of action exclusively within the Workmen's Compensation Act. The absence of just one of these elements will destroy recovery under the Workmen's Compensation Act, and remove it from its exclusivity provisions. We focus, therefore, on what the parties agree is the sole issue: Did Hernandez's injury arise in the course of her employment?

 Where the historical facts are undisputed, whether the accident arose out of and in the course of the employment is a question of law. *Edens v. New Mexico Health & Social Services Dept.*, 89 N.M. 60, 547 P.2d 65 (1976). "Arise out of" and "in the course of" employment are two distinct requirements and, in workmen's compensation cases, they must co-exist; one without the other is not enough to bring a complaint within the compass of the Act. *Gutierrez v. Artesia Public Schools*, 92 N.M. 112, 583

P.2d 476 (Ct.App.1978). "Arise out of" relates to cause; "in the course of" refers to the time, place and circumstances under which the injury occurred. *Id.* At oral argument, counsel for HELP conceded that the incident did not occur at work or during plaintiff's duty hours; he urged, however, that the act of reaching the employee at home by telephone was a "circumstance" of plaintiff's employment because it was the easiest way to contact her, and her employers did not want her to show up at work the following day.

We are impressed with Hernandez's response that if "in the course of employment" is interpreted to include such "circumstances" as argued by HELP, without regard to "time" and "place," then "in the course of" is rendered meaningless and indistinguishable from the "arise out of" requirement. That such an interpretation may not be attributed to the words "in the course of" is clear from the decisions in *Romero v. S.S. Kresge Co.*, 95 N.M. 484, 623 P.2d 998 (Ct.App.1981); *Hayes v. Ampex Corp.*, 85 N.M. 444, 512 P.2d 1280 (Ct.App. 1973); *McDonald v. Artesia Gen. Hosp.*, 73 N.M. 188, 386 P.2d 708 (1963).

In *Romero*, plaintiff fell between the inner and outer doors of the store on her way out of work; the appellate court reversed and held insupportable the trial court's finding that plaintiff sustained a compensable injury arising out of and in the course of her employment. It was the same in *Hayes, supra*: plaintiff fell three to six feet from the door through which she had just left work at the employer's plant; her hours of work had ended and she was going home. This court said: "She was not at work when the accident occurred." *Hayes* also said that " '[w]hile at work' is synonymous with 'in the course of the employment.' " (85 N.M. at 445, 512 P.2d 1280.)

Counsel's argument in *McDonald, supra*, that an injury suffered by a nurse on the front steps of the hospital as she was leaving work "should be deemed to have arisen out of and in course of her employment," was rejected by both the trial court and the Supreme Court. (73 N.M. at 190, 386 P.2d 708.)

If none of those employees, on their employers' premises when they were hurt, were "in the course of employment" at the time of their accidents, how could plaintiff here be in the course of her employment while at home several hours after the workday had ended?

Nor is this a case, as defendants argue, that will fall within the rule expressed in *Adamchek v. Gemm Enterprises*, 96 N.M. 24, 627 P.2d 866 (1981), as "a risk incident to the work itself," insofar as the risk of termination of employment is concerned. The "risk" discussed in *Adamchek, supra,* refers to whether or not the accident (or risk of it) "arises out of" the employment. We do not reach that question if the accident does not occur "in the course of" one's employment.

Likewise, with regard to defendant's reliance on *Gallegos v. Chastain and United Nuclear Corp.*, 95 N.M. 551, 624 P.2d 60 (Ct.App.1981), for the contention that neither negligence nor intentional infliction of a tort will take the suit out from under the exclusivity of the Workmen's Compensation Act, we make the same response: that rule applies *only* if the negligent or intentional tort against the workman arises out of and in the course of his employment. That posture of plaintiff's injury was never in question in *Gallegos, supra.*

Finally, if we were to adopt HELP's unique argument that the kind of damages asked determines whether the case must be brought under the Workmen's Compensation Act, we would be required to abolish any tort claim for an employee's injury, even if it resulted from an automobile accident in which the employer, while returning from church, runs into the employee who is on his way to a baseball game. This is a result never contemplated nor considered by the workmen's compensation enactment.

Having decided that plaintiff was not in the "course of her employment," we need not consider whether the injury was accidental or intentional.

█ It is apparent from the trial court's findings of fact and conclusion of law that the *fact* of plaintiff's employment

was equated with the exclusivity provisions of the Workmen's Compensation Act. In our view, Hernandez's allegation that she was terminated "in violation of its [HELP's] policies" is an allegation of breach of an employment contract. The Workmen's Compensation Act provides the mechanism for recovery for personal injury; it does not establish a remedy for breach of contract. *See Bottijliso v. Hutchison Fruit Co.*, 96 N.M. 789, 635 P.2d 992 (Ct.App. 1981); *Jacobs v. Stratton*, 94 N.M. 665, 615 P.2d 982 (1980); *Forrester v. Parker*, 93 N.M. 781, 606 P.2d 191 (1980); *Jones v. International Union of Operating Engineers*, 72 N.M. 322, 383 P.2d 571 (1963). The Act does not apply in this case.

We have recently determined that an employee is terminable by an employer "at will" in the absence of a contract of employment for a definite term, *Bottijliso v. Hutchison Fruit Co., supra.* Nevertheless, the Supreme Court has held that a personal policy guide may constitute an implied employment contract. *Forrester v. Parker, supra.* HELP's Personnel Rules and Regulations require supervisory personnel to implement, adhere to, and enforce its rules and regulations. One section of the guide is devoted to termination procedures, and Hernandez alleges that her termination was not in accordance with the procedures spelled out in the employer's Personnel Rules and Regulations.

As in *Forrester, supra*, Hernandez could reasonably expect her employer to conform to the procedures outlined in the personnel guide. As stated in *Forrester*, the words and conduct of the parties gave rise to an implied contract, and that implied contract, as contained in the provisions of the personnel guide, controls the employer-employee relationship of Hernandez and HELP. (93 N.M. at 782, 606 P.2d 191.)

We do not decide whether the procedures of the personnel manual were complied with; "only on the basis of a full evidentiary hearing or trial can that determination be made." *Forrester, supra*, at 93 N.M. 782, 606 P.2d 191. The issue of punitive damages remains for determination at trial.

*Ruiz v. Southern Pac. Transp. Co.*, 97 N.M. 194, 638 P.2d 406 (Ct.App.1981), discusses some of the criteria for award of punitive damages.

The summary judgment is reversed and remanded for reinstatement on the trial court docket.

It is so ordered.

DONNELLY, J., concurs.

SUTIN, J., specially concurs.

SUTIN, Judge (specially concurring).

*I concur only in the result that summary judgment be reversed.*

Plaintiff sued defendants for damages as a result of her wrongful discharge from employment. Defendants were granted summary judgment because plaintiff did not avail herself of the grievance or appeal procedures under HELP's Personnel and Policies Manual. Plaintiff appealed. We reversed. *Hernandez v. Home Ed. Livelihood Program*, 95 N.M. 281, 620 P.2d 1306 (Ct.App.1980).

After remand, defendants filed a second motion for summary judgment. It was based upon the fact that the injuries alleged by plaintiff arose out of an in the course of employment as contemplated in § 52–1–19, N.M.S.A.1978 of the Workmen's Compensation Act; that pursuant to § 52–1–9 and 52–1–6, the exclusive remedy available to plaintiff was the right to compensation. This summary judgment became the cart before the horse. On reversal of Hernandez # 1, the primary issue before the court was whether plaintiff's discharge complied with HELP's manual. By reversal of this second appeal, the case is remanded for a hearing to determine whether the procedures of the personnel manual were complied with. This result was reached by exploring the doctrine of employment "at will," an issue not raised or argued in this appeal.

The only issue is whether the district court had jurisdiction to hear plaintiff's claim.

The trial court granted summary judgment. The order preceding the judgment contained findings of fact and conclusions of law. The trial court failed to find or conclude that plaintiff suffered an accidental injury. Section 52–1–28(A)(1) reads:

Claims for workmen's compensation shall be allowed *only*:

(1) when the workman has sustained an *accidental injury* arising out of, and in the course of, his employment. [Emphasis added.]

"Accidental injury" or "accident" is an unlooked for mishap, or untoward event which is not expected or designed. *Lyon v. Catron County Comm'rs*, 81 N.M. 120, 464 P.2d 410 (Ct.App.1969). Plaintiff did not suffer an "accidental injury." As the court found, "all injuries complained of were the result of the manner in which defendants terminated her employment." Defendants caused plaintiff's injuries by a telephone message of discharge. Plaintiff did not herself undertake any activity or conduct that accidentally caused her injuries. Plaintiff did not suffer an accidental injury. Plaintiff was not entitled to workmen's compensation.

Sections 52–1–19 and 52–1–9 relied on by defendants relate to accidental injuries. My disagreement with the majority opinion arises out of the application of § 52–1–9, an exclusive remedy provision set forth in the majority opinion. It relates to:

The right to compensation * * * in lieu of any other liability whatsoever * * * for any personal injury accidentally sustained * * * and the injury * * * is proximately caused by accident arising out of and in the course of his employment * *.

This section means that if a workman suffers an *accidental injury* and other essential factors, he is compelled to seek workmen's compensation benefits "in place of any liability whatsoever." His claim is governed by the Workmen's Compensation Act. He can seek no other relief. Plaintiff did not suffer an accidental injury.

Nevertheless, the majority opinion focuses on whether plaintiff's injuries arose out

of and within the scope of plaintiff's employment. This was the issue raised by defendants. It was irrelevant. It is unnecessary to answer irrelevant issues raised in an appeal.

Plaintiff's claim was outside the Workmen's Compensation Act. Therefore, the district court had jurisdiction to hear plaintiff's claim.

Upon reversal, defendants may file a third motion for summary judgment based upon the exclusive provisions of the last paragraph of § 52–1–8. It reads in pertinent part:

> Any employer who has complied with the provisions of the Workmen's Compensation Act * * * shall not be subject to any other liability whatsoever for the * * * *personal injury* to any employee, *except as provided in the * * * Act,* and all causes of action * * * and all * * * common-law rights and remedies for and on account of such * * * personal injury to, any such employee and accruing to any and all persons whomsoever, are hereby abolished except as provided in the * * * *Act.* [Emphasis added.]

The employer is not liable for "personal injury to any employee" unless the Workmen's Compensation Act provides a remedy for "personal injury." No remedy is available if the Act does not provide for one. All common law rights and remedies are abolished.

The question is: Does the Workmen's Compensation Act provide a remedy for "personal injury"?

The majority opinion refused to answer this question because it was not an issue in this case. Neither was the issue of employment "at will" which became the basis of reversal.

In Count II, plaintiff requested punitive damages. The trial court found "there being absolutely no evidence whatsoever that the *resulting injury was intentional* * * * Count II of Plaintiff's complaint should also be dismissed * * *." [Emphasis by court.]

The majority opinion refused to decide the issue of summary judgment as to puni-

tive damages. It reversed the summary judgment "and remanded for reinstatement on the trial court docket." There being no restrictions, the delay in this case is indeterminable. This delay should be avoided.