2008-NMCA-095

188 P.3d 1253

**Dana HOWSE, Plaintiff–Appellant,**

v.

**ROSWELL INDEPENDENT SCHOOL DISTRICT and Communication Workers of America, AFL–CIO, Defendants–Appellees.**

No. 27,171.

Court of Appeals of New Mexico.

April 21, 2008.

Certiorari Denied, No. 31,111, June 12, 2008.

Martin Law Firm, W.T. Martin, Jr., Kenneth D. Dugan, Carlsbad, NM, for Appellant.

French & Associates, P.C., Stephen G. French, Michelle Lalley Blake, Kerri L. Allensworth, Albuquerque, NM, for Appellee Roswell Independent School District.

Youtz & Valdez, P.C., Shane C. Youtz, Albuquerque, NM, Richard Rosenblatt & Associates, Richard Rosenblatt, Greenwood Village, CO, for Appellee Communication Workers of America, AFL–CIO.

## OPINION

PICKARD, Judge.

{1} Dana Howse (Howse) appeals the district court's dismissals of her claim against her union, Communication Workers of Amer-

ica, AFL–CIO (CWA), for breach of its duty to represent her fairly in a pay scale grievance she wished to file against her employer, the Roswell Independent School District (RISD), pursuant to the collective bargaining agreement (CBA) between RISD and CWA and her claim against RISD for breach of the CBA. The district court granted CWA's motion for summary judgment and RISD's motion to dismiss. We reverse the summary judgment because there were issues of fact concerning the reasons CWA failed to file a written grievance in the pay scale dispute. We reverse the dismissal because Howse's complaint against RISD in this hybrid action was timely filed pursuant to the discovery rule applicable in such actions.

## BACKGROUND

{2} Howse began her employment with RISD in November 1981 and spent her first sixteen years with the school district as a teacher's aide, eventually earning $12,000 a year. At the end of her term in this position, Howse was at salary step twelve on the applicable RISD pay scale. When the teacher's aide program was abolished, Howse spent two years with RISD as a truancy clerk earning the same salary. In 2000, she voluntarily transferred to a position as a security guard, and for the first time in her career with RISD, she became a member of CWA. CWA represents RISD employees in a collective bargaining unit that includes security workers. When Howse joined the union, a CBA was in effect between RISD and CWA that named CWA the "sole and exclusive bargaining agent with respect to [the bargaining unit's] wages, hours and other terms and conditions of employment."

{3} When RISD transferred Howse to her security guard position, she was assigned to salary step zero on the pay scale for campus aides, and her annual salary became $19,188. Howse believed that RISD had incorrectly assigned her to step zero because she had been employed by RISD for many years, and in August of 2000, she spoke with Pauline Ponce, assistant superintendent of RISD, about her step assignment. Ponce told Howse that she would check into the issue and get back to her. Ponce never responded to Howse's inquiry. About two to three months later, Howse discussed her step assignment with Raul Castro, a co-worker and union steward. They agreed that Howse would write a letter to Dr. Cory Butler, assistant superintendent for human resources at RISD, addressing the issue. Butler responded to Howse in writing, stating that the CBA did not apply to her because when she was transferred to her security guard position she was "neither upgraded nor downgraded within the CWA salary schedules." He also wrote that Howse had been "moved from a salary schedule not covered under the CWA agreement to a position on the CWA agreement."

{4} Following receipt of Butler's letter in May 2001, Howse contacted Castro and requested that CWA submit a grievance addressing her salary step assignment. Castro told her that he would speak with Larry Yankee, chief steward for the bargaining unit. At some point soon thereafter, Yankee spoke directly with Howse and told her that he spoke with Butler, but that Butler was inflexible. Yankee asked Howse if she would agree to a compromise step assignment, but Howse told him that she felt she was entitled to a step fifteen assignment and would not settle. Neither Castro nor Yankee told Howse that CWA would not follow through with her grievance on this issue at that time.

{5} The initially required written grievance was never filed on Howse's step assignment. In November 2001, Castro told Howse that Yankee had informed him that CWA could not pursue her matter any further because "the timeline had expired." But at no point did either Castro or Yankee tell Howse that CWA would not or could not pursue her matter any further because they had never filed the initially required written grievance. Meanwhile, Howse was relying on CWA to pursue her grievance. CWA never told Howse that her step assignment claim was not valid, and in fact, Howse understood Yankee to have indicated that he believed her claim was valid. Howse did not learn that CWA had never filed the initially required grievance until May 9, 2002.

## DISCUSSION

### A. CWA's Motion for Summary Judgment

#### 1. Standard of Review

{6} Our review of summary judgment is de novo. *Stennis v. City of Santa Fe*, 2008–

NMSC–008, ¶ 12, 143 N.M. 320, 176 P.3d 309. "Summary judgment is proper if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Roth v. Thompson*, 113 N.M. 331, 334, 825 P.2d 1241, 1244 (1992). We "view the facts in a light most favorable to the party opposing the motion and draw all reasonable inferences in support of a trial on the merits." *Handmaker v. Henney*, 1999–NMSC–043, ¶ 18, 128 N.M. 328, 992 P.2d 879.

## 2. Howse's Claim Against CWA

▉ {7} As the exclusive bargaining agents of the members of Howse's bargaining unit, CWA and its officers and agents were under a duty to fairly represent Howse. *See Jones v. Int'l Union of Operating Eng'rs*, 72 N.M. 322, 330, 383 P.2d 571, 576 (1963). "The duty does not end at the bargaining table but extends throughout the contract, and, among other things, it involves a day-to-day adjustment of working rules and the protection of employee's rights secured by the contract." *Id.* However,

> [t]he union has great discretion in handling the claims of its members, and in determining whether there is merit to such claim which warrants the union's pressing the claim through all of the grievance procedures, including arbitration, and the courts will interfere with the union's decision not to present an employee's grievance only in extreme cases.

*Id.* at 331, 383 P.2d at 577. In fact, a "union's refusal or failure to take the grievance to arbitration has to be arbitrary, discriminatory or in bad faith" to constitute a breach of its duty of fair representation. *Callahan v. N.M. Fed'n of Teachers–TVI*, 2006–NMSC–010, ¶ 13, 139 N.M. 201, 131 P.3d 51. Howse contends that issues of fact remain as to whether CWA's decision not to pursue her grievance was arbitrary. We agree, and we reverse the district court's grant of summary judgment.

▉ {8} "A union's conduct can be classified as arbitrary only when it is irrational, when it is without a rational basis or explanation." *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 46, 119 S.Ct. 292, 142 L.Ed.2d 242 (1998). "[A]bsent justification or excuse, a union's negligent failure to take a basic and required step, unrelated to the merits of the grievance, is a clear example of arbitrary and perfunctory conduct which amounts to unfair representation." *Ruzicka v. Gen. Motors Corp.*, 649 F.2d 1207, 1211 (6th Cir.1981). As discussed below, CWA can point to no admissible evidence that explains its reasons for not taking the basic step of filing the initially required written grievance on Howse's behalf. Absent justification or excuse, this failure may be found under the law to be "unexplained union inaction, amounting to arbitrary treatment, [that] has barred an employee from access to an established union-management apparatus for resolving grievances." *Id.* (internal quotation marks and citation omitted).

{9} The district court's written decision focused on the question of whether CWA's decision not to pursue Howse's grievance was without a rational basis or explanation. The court granted summary judgment because Howse admitted at her deposition that she had no facts that CWA's decision not to pursue her grievance was based on anything other than its judgment that CWA could not prevail in arbitration. The court ruled that CWA simply disagreed with Howse based on its review of the circumstances and did not willfully and unreasonably act arbitrarily as a matter of law, finding that Yankee, who participated in the negotiations for the CBA, felt that RISD had full discretion to determine an employee's starting pay and did not violate any provision of the CBA when it determined a new hire's starting salary so long as that starting salary fit within the CBA's salary schedule. The court found that because Howse's starting salary fit within the CBA's salary schedule, Yankee determined that there was no meritorious grievance that CWA could file alleging that Howse's starting salary violated the CBA and that, based on this belief, Yankee told Howse that there was nothing else CWA could do for her.

▉ {10} However, the only evidence in the record supporting these findings by the district court is contained in Yankee's signed, written "declaration." In his declaration, Yankee discussed why, under his reading of the CBA, Howse was not entitled to the

salary step assignment she desired, and he recounted his discussions with Butler and Howse on the matter. However, Yankee's declaration was not verified under oath by someone authorized to administer an oath. Its contents are therefore inadmissible because the document does not satisfy the affidavit requirement of Rule 1–056(E) NMRA. *See Kiehne v. Atwood,* 93 N.M. 657, 667, 604 P.2d 123, 133 (1979) (stating that an affidavit is a "written statement, under oath, sworn to or affirmed by the person making it before some person who has authority to administer an oath or affirmation"). Absent the facts stated in the declaration, there is no evidence in the record establishing CWA's rationale for not pursuing Howse's grievance.

{11} Neither does Howse's own testimony unequivocally support the reason why Yankee did not file the grievance. Her testimony was elicited by a series of questions, asking her whether she had any facts that Castro's or Yankee's actions were based on ill will, hostility, discrimination, or anything other than this judgment that they could not prevail, to all of which she answered in the negative. However, the state of her knowledge does not, without more, establish the reasons for the failure to file. The union's actions therefore remain unexplained. " 'Unexplained union inaction' which substantially prejudices a member's grievance may be sufficiently arbitrary to constitute unfair representation." *Farmer v. ARA Servs., Inc.,* 660 F.2d 1096, 1103 (6th Cir.1981) (citation omitted). Because an issue of fact remains on the question of CWA's rationale for not pursuing Howse's grievance, we must reverse the court's grant of summary judgment. *See Sanchez v. Shop Rite Foods,* 82 N.M. 369, 370–71, 482 P.2d 72, 73–74 (Ct. App.1971) (holding that where summary judgment rests on facts stated in an affidavit and the affidavit is found insufficient as a matter of law, summary judgment is reversible).

{12} In response to Howse's challenge to the admissibility of the Yankee declaration, CWA argues that Howse did not specifically controvert the facts in the declaration discussed above by reference to specifically numbered undisputed facts, but she instead admitted them or did not challenge them. CWA contends that these facts are thus deemed admitted under Rule 1–056(D)(2). We disagree with CWA's hypertechnical reading of our summary judgment rule. By arguing in her memorandum in opposition to summary judgment that the Yankee declaration was inadmissible and citing cases to this effect, Howse fairly invoked a ruling on whether those facts, as they appeared in CWA's motion for summary judgment, were controverted. *Cf. Lessen v. City of Albuquerque,* 2008–NMCA–085, ¶¶ 10–11, 144 N.M. 314, 187 P.3d 179 [No. 26,361(filed April 1, 2008) ] (concluding that although the plaintiff did not argue in her response to motion for summary judgment that immunity was waived under two provisions of the Tort Claims Act, the parties nonetheless invoked a ruling on these provisions below because the plaintiff alleged waiver under both provisions in her first amended complaint, and the city made arguments to the district court regarding both provisions in its motion for summary judgment).

{13} Finally, Howse's claim of arbitrary action is not limited to the simple fact of not filing the grievance. Howse also relies on CWA's actions in leading her to believe both that the grievance had merit and that CWA was taking steps to process it, which deprived Howse of the ability to process the grievance herself until it was too late to do so. CWA's claim that it disagreed with the merits of Howse's grievance (1) conflicts with Howse's claim that it led her to believe that it thought the grievance had merit and (2) does not explain why it did not so inform Howse earlier so that she could have taken timely action herself. The summary judgment in favor of CWA is reversed.

## B. RISD's Motion to Dismiss

### 1. Standard of Review

{14} In reviewing an order dismissing a complaint for failure to state a claim upon which relief may be granted, we apply the following standards:

A motion to dismiss pursuant to [Rule] 1–012(B)(6) [NMRA 2003] tests the legal suf-

ficiency of the complaint. In reviewing an order granting a motion to dismiss, we accept as true all facts properly pleaded. A complaint is subject to dismissal under [Rule] 1-012(B)(6) only if under no state of facts provable thereunder would a plaintiff be entitled to relief.... Under this standard of review only the law applicable to [a plaintiff's] claim is tested, not the facts which support it.

*Hovet v. Lujan,* 2003-NMCA-061, ¶ 8, 133 N.M. 611, 66 P.3d 980 (internal quotation marks and citation omitted), *aff'd sub nom. Hovet v. Allstate Ins. Co.,* 2004-NMSC-010, 135 N.M. 397, 89 P.3d 69.

### 2. Howse's Claim Against RISD

{15} The gravamen of Howse's claim against RISD is for breach of contract for the school district's failure to assign her to the correct salary step under the CBA. RISD moved to dismiss on the ground that Howse's claim was barred by the two-year statute of limitations for written contracts set forth in NMSA 1978, § 37-1-23(B) (1976), and the district court dismissed Howse's claim against RISD on this basis.

{16} However, Howse asserts that her action against RISD is not a standalone breach of contract action. She instead contends that her claim against RISD is the second prong of a hybrid suit in which RISD is liable for CWA's breach of its duty of fair representation. In the federal scheme, "[t]he 'hybrid' suit is a judicially created exception to the general rule that an employee is bound by the result of grievance or arbitration remedial procedures provided in a collective-bargaining agreement." *Edwards v. Int'l Union, United Plant Guard Workers of Am.,* 46 F.3d 1047, 1051 (10th Cir.1995); *see Vaca v. Sipes,* 386 U.S. 171, 185-86, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). "Where an employee can prove he suffered [as the result of a] violation of a collective-bargaining agreement that would have been remedied through the grievance process had the union fulfilled its statutory duty to represent the employee fairly, federal law will provide a remedy." *Edwards,* 46 F.3d at 1051. "In such instance, the union has effectively ceased to function as the employee's repre-

sentative." *Aguinaga v. United Food & Commercial Workers Int'l Union,* 993 F.2d 1463, 1471-72 (10th Cir.1993). "To leave the employee remediless under these circumstances would, in the words of the Supreme Court, 'be a great injustice.'" *Edwards,* 46 F.3d at 1051 (quoting *Vaca,* 386 U.S. at 186, 87 S.Ct. 903). Although the CBA in this case allowed Howse to pursue her own grievance, the factual basis of her unfair representation claim described above led to the same result as occurs when a union is the sole entity entitled to bring the grievance. Therefore, this remedy is available to Howse.

{17} In a hybrid suit, the statute of limitations does not begin to run on the claim against the employer until "the plaintiff receives notice that the union will proceed no further with the grievance." *Hersh v. Allen Prods. Co.,* 789 F.2d 230, 232 (3d Cir.1986) (internal quotation marks and citation omitted). In such cases, the cause of action against the employer accrues when "the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged [violation]." *Hungerford v. United States,* 307 F.2d 99, 102 (9th Cir.1962), *overruled on other grounds by Ramirez v. United States,* 567 F.2d 854, 857 (9th Cir.1977). This rule has a sound policy rationale.

The unfair representation claim is the necessary "condition precedent" to the employee's suit. Allowing the [breach of CBA] claim to be tolled until the unfair representation claim also accrues is consistent with the congressional goal of resolving labor disputes in the first instance through the collectively bargained grievance procedure, because the employee will be encouraged to persist in efforts to have the union act on his or her behalf. Therefore, the employee's claim on the employer's alleged breach of the collective bargaining agreement is tolled until it was or should have been clear to the employee that the union would not pursue the grievance.

*Vadino v. A. Valey Eng'rs,* 903 F.2d 253, 261 (3d Cir.1990) (citations omitted); *cf. Maestas v. Zager,* 2007-NMSC-003, ¶ 21, 141 N.M. 154, 152 P.3d 141 (noting, in the medi-

cal malpractice context, that "a claim for medical malpractice accrues when the plaintiff knows of both the existence and cause of his injury and not when the plaintiff knows that the acts inflicting the injury might constitute medical malpractice. . . . A plaintiff's discovery of relevant facts is distinct from his or her discovery of legal rights" (citations omitted)).

{18} Howse argued below that the statute of limitations on her claim against RISD did not begin to run until she became aware that the union had breached its duty of fair representation. The district court rejected this argument on the ground that no New Mexico case had established the hybrid cause of action asserted by Howse and granted RISD's motion, finding that the statute of limitations began to run on Howse's claim against RISD when the CBA was breached, i.e., when Howse was transferred by RISD to her security guard position on May 9, 2000, and that her claim, which was filed on October 2, 2003, was therefore barred. *See Nashan v. Nashan,* 119 N.M. 625, 633, 894 P.2d 402, 410 (Ct.App.1995) ("The statute of limitations on a breach of contract claim runs from the date the contract is breached.").

{19} On appeal, Howse calls our attention to *Jones,* 72 N.M. 322, 383 P.2d 571, contending that in that case, the New Mexico Supreme Court recognized the hybrid cause of action. RISD argues that because Howse did not cite to *Jones* in the district court, we should not consider it on appeal. However, the district court is "charged with knowing and correctly applying established New Mexico precedent," *State v. Gomez,* 1997–NMSC–006, ¶ 30, 122 N.M. 777, 932 P.2d 1, and as long as a party has "assert[ed] the legal principle upon which their claims are based" and "develop[ed] the facts" in the district court, *id.* ¶ 29, we will consider that party's argument to have been adequately preserved below even if citation to a significant authority was not made to the district court. *See Garcia ex rel. Garcia v. La Farge,* 119 N.M. 532, 540, 893 P.2d 428, 436 (1995). Because Howse met these requirements in the proceedings below, we will consider the applicability of *Jones* to Howse's appeal.

{20} In *Jones,* our Supreme Court recognized that "the grievance procedures provided by a collective bargaining agreement should be a bar to suits by individual employees against the employer for an alleged violation of the agreement," but that an exception to this bar exists where "the union acted arbitrarily, fraudulently, and in bad faith in failing to press the employee's grievance through all of the procedure provided by the agreement." 72 N.M. at 331, 383 P.2d at 577. Accordingly, although the Court in *Jones* did not expressly use the term "hybrid" in its discussion, there can be no doubt that the Court recognized that an action against an employer will lie where the employee has also brought an action against his or her union for breach of the duty of fair representation. Hybrid actions, then, are allowable under New Mexico law, and today we formally recognize that such suits may be brought in New Mexico courts.

{21} Moreover, although Section 37–1–23(B) provides for a two-year statute of limitations on Howse's action against RISD, we follow the federal courts in holding that the statute of limitations on Howse's claim did not begin to run until she was given notice that CWA would not be pursuing her grievance against RISD. RISD urges us to adopt the federal six-month statute of limitations applicable to hybrid claims in federal courts, contending that we may not "selectively ignore" the six-month statute of limitations applied in the federal line of authority on tolling of limitations. *See, e.g., DelCostello v. Int'l Bhd. of Teamsters,* 462 U.S. 151, 171–72, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). However, "New Mexico courts follow federal law only to the extent they find that law persuasive." *State v. Long,* 1996–NMCA–011, ¶ 7, 121 N.M. 333, 911 P.2d 227. In the present case, we find federal law persuasive only to the extent that, as discussed above, we adopt the federal rule for tolling of the applicable statute of limitations. We do not adopt the federal six-month statute of limitations itself. "We cite federal cases only to the extent that we find them instructive and not as binding precedent." *Lowery v. Atterbury,* 113 N.M. 71, 74 n. 2, 823 P.2d 313, 316 n. 2 (1992). Since New Mexico already has a statutorily created stat-

ute of limitations for contract actions against the state, and since we have no statutory limitation period for actions for breach of a CBA, we see no reason to borrow from the federal labor law statute of limitations. *See generally* Tracy A. Bateman, Annotation, *What Statute of Limitations Applies to State Law Action by Public Sector Employee for Breach of Union's Duty of Fair Representation,* 12 A.L.R.5th 950,.956–58 (1993) (noting that federal labor law does not apply to public employees and therefore states usually do not adopt federal six-month limitation period). Accordingly, we hold that the two-year statute of limitations period provided for in Section 37–1–23(B) is appropriate for hybrid claims brought in New Mexico courts.

{22} We note that a factual issue remains as to when Howse "received notice" that CWA had breached its duty of fair representation. Howse alleges that she discovered that a grievance was never filed on her behalf around May 9, 2002. However, she also admits that Castro told her in November 2001 that the union could not pursue her grievance because the deadline for doing so had passed. In either case, Howse's complaint, which was filed on October 3, 2002, was not barred by the two-year statute of limitations, and we reverse the district court's order of dismissal.

## CONCLUSION

{23} We reverse the district court's grant of summary judgment on Howse's claims against CWA, and we reverse the court's dismissal of Howse's claims against RISD.

{24} **IT IS SO ORDERED.**

WE CONCUR: JAMES J. WECHSLER and MICHAEL E. VIGIL, Judges.