2008-NMCA-094

189 P.3d 1217

Gary A. GRANBERRY and Monica Sanchez, Plaintiffs–Appellants,

v.

ALBUQUERQUE POLICE OFFICERS ASSOCIATION, Defendant–Appellee.

Nos. 26,898, 27,026.

Court of Appeals of New Mexico.

June 5, 2008.

Patricia G. Williams, Lorna M. Wiggins, Wiggins, Williams & Wiggins, P.C., Albuquerque, NM, for Appellants.

John James D'Amato, Jr., Albuquerque, NM, for Appellee.

## OPINION

PICKARD, Judge.

{1} Police Lieutenants Gary Granberry (Granberry) and Monica Sanchez (Sanchez) (collectively Appellants) appeal the district court's grant of summary judgment against them on their breach of fair representation claim against their union, Albuquerque Police Officers Association (APOA). Appellants contend that when APOA settled a prohibited practices complaint (PPC) with the City of Albuquerque (the City) on behalf of four other police sergeants but failed to include Appellants in the settlement, APOA breached its duty of fair representation to Appellants. On appeal, Appellants argue that genuine issues of material fact preclude summary judgment on their claim. We agree, and we reverse.

## BACKGROUND

{2} In September 2002, Appellants were sergeants with the Albuquerque Police Department (APD) who qualified to participate in a promotion process for the rank of lieutenant. Granberry is a black male over the age of forty; Sanchez is a Hispanic female. Appellants participated in the process by taking the required tests, but neither one was named on the list of those eligible for promotion to lieutenant. At all times relevant to this action, Appellants were members of APOA. When APOA discovered that the City had apparently reinterpreted the rules and regulations governing a police officer's eligibility to participate in the promotion process without giving notice to APOA and that, as a result, the City had allowed two ineligible sergeants to participate in the process, APOA filed a PPC against the City alleging a violation of the collective bargaining agreement (CBA) between the City and APOA.

{3} Prior to a hearing on the PPC, APOA obtained settlements from the City on behalf of four Anglo male sergeants who were aggrieved by the allegedly flawed promotional process. Settlements were not obtained for Appellants, and Appellants were not notified by APOA that the union was pursuing a settlement on behalf of a few of its members. Sergeant Daniel Torgrimson, who is not a party to this case, notified APOA prior to settlement that as soon as the list for promotion to lieutenant came out, everyone who participated in the process who was not on the list would complain about the fact that ineligible sergeants had been allowed to participate. Appellants contend that as a result of their exclusion from the settlement, they lost promotional opportunity, income and fringe benefits, and opportunity for advancement and also suffered damage to their careers. They claim that APOA's actions were "arbitrary, discriminatory, and in bad faith."

{4} Appellants did not learn about the settlement until January 2003, and therefore they did not come forward earlier to be included in the PPC. Appellants argue that they have not been required in the past to request assistance from APOA individually in order to benefit from a PPC. Sanchez states in her affidavit that she has previously benefitted from the filing and settlement of PPCs without individually coming forward and requesting APOA's assistance, including the filing of PPCs concerning lunchtime pay and take-home cars. Granberry states that he has also benefitted in the past from the filing of PPCs without having to come forward individually and request assistance from APOA. Moreover, Appellants allege that an officer named Robert Haarhues was granted relief under the settlement without apparently requesting involvement through the APOA. Instead of approaching the union, Appellants made their complaints about the promotion process known through the chain of command by ensuring that the appropriate subject matter experts were notified of the flaws in the process. Additional facts will be included in our discussion below as necessary.

## DISCUSSION

### Standard of Review

■ {5} Our review of summary judgment is de novo. *Stennis v. City of Santa Fe*, 2008–NMSC–008, ¶ 12, 143 N.M. 320, 176 P.3d 309. "Summary judgment is proper if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Roth v. Thompson*, 113 N.M. 331, 334, 825 P.2d 1241, 1244 (1992). We "view the facts in a light most favorable to the party opposing the motion and draw all reasonable inferences in support of a trial on the merits." *Handmaker v. Henney*, 1999–NMSC–043, ¶ 18, 128 N.M. 328, 992 P.2d 879.

### APOA's Duty of Fair Representation

■ {6} It is undisputed that as the exclusive bargaining agent of Appellants' bargaining unit, APOA was under a duty to fairly represent Granberry and Sanchez. *See Jones v. Int'l Union of Operating Eng'rs*, 72 N.M. 322, 330, 383 P.2d 571, 576 (1963); *Howse v. Roswell Indep. Sch. Dist.*, 2008–NMCA–095, ¶ 7, 144 N.M. 502, 188 P.3d 1253 (2008). A breach of the duty of fair representation is proved only by facts that establish the union "acted arbitrarily, fraudulently or in bad faith." *Callahan v. N.M. Fed'n of Teachers–TVI*, 2006–NMSC–010, ¶¶ 3, 15, 139 N.M. 201, 131 P.3d 51. Appellants argue that by filing the PPC generally on behalf of affected members of the bargaining unit, APOA, as their exclusive representative under the CBA, undertook their representation with regard to the allegedly flawed promotion process. They contend that by obtaining settlements from the City for the four other aggrieved members of the bargaining unit, but not for them, APOA abandoned them in the settlement of the PPC, thus breaching its duty of fair representation.

■ {7} The district court granted summary judgment on Appellants' claims in a decision letter, noting that to accept Appellants' position would loosen the strict *Callahan* standard and holding that the material facts presented by Appellants established only that the APOA should have known of the possible existence of Appellants' claims before it settled the claims of the four other officers, but that to impose a duty on APOA to investigate whether members who did not come forward should obtain relief under a PPC would contravene policy considerations aimed at protecting unions. The district court correctly noted that the *Callahan* standard is difficult to prove. "[M]ere negligence" on the part of union is not enough. *Id.* ¶¶ 10–11, 15. In *Adams v. United Steelworkers of America*, 97 N.M. 369, 374–75, 640 P.2d 475, 480–81 (1982), our Supreme Court held that "honest, mistaken conduct" is not sufficient to support a claim for breach of the duty of fair representation. Moreover, our courts have long recognized that a "union has great discretion in handling the claims of its members ... and the courts will interfere with the union's decision ... only in extreme cases." *Jones*, 72 N.M. at 331, 383 P.2d at 577. We follow this approach "in order to limit the situations in which an employee may judicially contest the results of grievance and arbitration proceedings that are the subject of collective bargaining." *Hoffman*

*v. Lonza, Inc.,* 658 F.2d 519, 522 (7th Cir. 1981), *overruling on other grounds recognized by President v. Ill. Bell Tel. Co.,* 865 F.Supp. 1279, 1291 n. 21 (N.D.Ill.1994).

{8} While we are mindful of the general policy of deference to union decision making, we note that a union's discretion on whether to represent a member's complaint is not unlimited. The *Callahan* standard may be difficult to prove, but it is not impossible. *See, e.g., Howse,* 2008–NMCA–095, ¶¶ 7–13. This Court has recently noted that "[a] union's conduct can be classified as arbitrary only when it is irrational, when it is without a rational basis or explanation." *Id.* ¶ 8 (quoting *Marquez v. Screen Actors Guild, Inc.,* 525 U.S. 33, 46, 119 S.Ct. 292, 142 L.Ed.2d 242 (1998)). Moreover, " ' "[u]nexplained union inaction" which substantially prejudices a member's grievance may be sufficiently arbitrary to constitute unfair representation.' " *Id.* ¶ 11 (quoting *Farmer v. ARA Servs., Inc.,* 660 F.2d 1096, 1103 (6th Cir.1981)). Accordingly, where a union acts or fails to act to the detriment of a member's complaint, it must offer a rational basis or explanation for its actions. In the instant case, we hold that APOA's duty of fair representation requires that once it assumed representation of the identifiable group of potentially aggrieved participants in the allegedly flawed promotion process by filing a PPC on the group's behalf, it could not arbitrarily exclude some of the members of the group from the resolution of the PPC. Because the question of whether the union's exclusion of Appellants was arbitrary hinges on a genuine issue of material fact, it is for a jury to decide whether the union has breached its duty.

**Summary Judgment Was Improperly Granted**

{9} APOA moved for summary judgment on the basis that Appellants failed to demonstrate that they affirmatively sought assistance from APOA in pursuing their complaints concerning the flawed promotional process. APOA argues that because it was wholly unaware of Appellants' individual complaints about the allegedly flawed promotion process and because Appellants took no steps to notify the union that they had such complaints, APOA should not be held liable for its exclusion of Appellants from the settlement with the City. Whether this explanation was rational is to be decided on the basis of two questions: (1) whether the PPC filed by APOA was a "grievance" or a "complaint about promotion" under the CBA, and (2) whether APOA bylaws preclude recovery by Appellants for failure to come forward. We resolve the first question as a matter of law, and we hold that the second question is a genuine issue of fact to be determined by the jury.

{10} The parties in this appeal dispute the nature of the PPC filed in this case. APOA likens a PPC to a grievance that Appellants failed to properly pursue under the plain language of the CBA, whereas Appellants argue that the PPC is more akin to "complaints about promotions," which they contend they properly pursued through the chain of command. The CBA between APOA and the City describes the procedures for pursuing grievances, but it does not appear to address the filing and resolution of PPCs. In fact, the parties have not directed us to any discussion of PPCs in the CBA whatsoever. The CBA defines grievances as "formal complaints of employees concerning actions taken by management, which result in loss of pay or seniority, or in written reprimand." The CBA appears to contemplate that employees who wish to pursue such formal complaints must come forward and participate in their filing and resolution. According to the CBA, however, "[o]ther complaints officers have about working conditions, rules and regulations, promotions and transfers must be made through the chain of command." Appellants argue that a PPC falls into this latter category, and that their complaints concerning the alleged flaws in the promotion process were appropriately made through the chain of command, thus satisfying their burden under the CBA.

{11} We agree with Appellants and hold as a matter of law that the PPC filed in this case was not a grievance under the CBA. The CBA's definition of a grievance appears to cover actions taken by management that are disciplinary in nature. The PPC filed in

this case did not relate to any disciplinary action taken on behalf of management. Instead, it related to loss of promotional opportunity due to the flawed promotion process and was thus a "complaint about promotion." Under the CBA, Appellants are required to bring these complaints through the chain of command rather than taking them to the union. Appellants stated in their affidavits that they met this requirement by telling the subject matter experts who designed the promotion process about the perceived flaws, and APOA does not challenge this fact at this juncture in these proceedings. Accordingly, APOA's stated reason why it did not include Appellants in the resolution of the PPC may be found by a jury to be irrational and thus "arbitrary" under the *Callahan* standard.

■ {12} Moreover, APOA argues that Appellants are without remedy because a union bylaw requires that when any member is "involved in an unfair labor practice, it shall be the duty of the member to notify the [APOA] Board and lend his name to any action instituted by the Board to resol[v]e the unfair labor practice." The district court granted summary judgment partly on the basis that Appellants' failure to come forward violated this bylaw. However, in their summary judgment response, Appellants proffered facts based on their personal knowledge that places in dispute the requirement that union members must individually request assistance from APOA in order to derive benefit from the filing of a PPC. In addition, the portion of the bylaw quoted above is Paragraph 9.11. Paragraph 9.08 states that the APOA is relieved of obligations toward members when the members do not comply with the "foregoing" bylaws, thereby leading to a question of whether Paragraph 9.11 is enforceable through Paragraph 9.08.

{13} Turning to the facts, Appellants contend first that the union typically files a PPC on behalf of all of its affected members, without naming individuals. We note that this is true of the PPC filed by APOA in this case, which does not name individuals and was allegedly filed after the union was told by its members that every candidate in the promotional process was affected by the un-

qualified candidates' participation. Furthermore, Appellants argue that historically they have not been required to individually request assistance from APOA in order to benefit from a PPC. Sanchez states in her affidavit that she has previously benefitted from the filing and settlement of PPCs concerning lunchtime pay and take-home cars without individually coming forward and requesting APOA's assistance. Granberry states in his affidavit that he too has benefitted from PPCs filed by the union without having to come forward. Neither Appellant is aware of what an "unfair labor practice" might be that would trigger an obligation to report to APOA. Finally, Sergeant Torgrimson, another APD officer who participated in the flawed promotional process, states in his affidavit that an officer named Haarhues was granted relief as a result of APOA's settlement with the City under circumstances in which it did not appear that he requested involvement through the APOA.

{14} A union bylaw whose viability has been squarely disputed by Appellants' facts does not necessarily preclude relief by Appellants on their breach of fair representation claim. Because the above facts dispute the applicability of the bylaw to the filing of a PPC, we cannot hold as a matter of law that Appellants were required to come forward in order to be included in the resolution of the PPC filed by APOA against the City. We hold that, on the basis of the summary judgment record below, it is for a jury to resolve the question of whether, in light of the conflicting evidence detailed above, Appellants are precluded from recovery by the APOA bylaw. Accordingly, we reverse summary judgment and hold that it is for a jury to determine whether APOA's actions breached its duty of fair representation to Appellants, whether Appellants suffered damages, and whether APOA's actions were the proximate cause of those damages. *See Calkins v. Cox Estates*, 110 N.M. 59, 61, 792 P.2d 36, 38 (1990) (holding that proximate cause is a question of fact); *Brooks v. Norwest Corp.*, 2004–NMCA–134, ¶ 39, 136 N.M. 599, 103 P.3d 39 (holding that the question of whether a duty has been breached is a question of fact and also noting that a plaintiff must prove damages).

{15} As a final matter, we note APOA's arguments that the settlements on behalf of the Anglo males did not involve the flawed promotional process and that each of these men had claims unrelated to the claims of Appellants. The brief contains no record citation for these claims, and we have been unable to verify them in the record. As in the recently decided *Howse* case, 2008–NMCA–095, ¶ 10, where the only evidence explaining the reasons for the union's actions was an inadmissible declaration, here, the reason is stated as part of counsel's argument in the appellate brief without citation to the record. This does not rebut Appellants' evidence, from which a jury might infer arbitrary or discriminatory union action. *See Cain v. Champion Window Co. of Albuquerque*, 2007–NMCA–085, ¶ 14, 142 N.M. 209, 164 P.3d 90 (holding that arguments of counsel are insufficient to meet the burden of establishing a material fact for summary judgment purposes).

## CONCLUSION

{16} We reverse the district court's grant of summary judgment on Appellants' claim that APOA breached its duty of fair representation.

{17} **IT IS SO ORDERED.**

WE CONCUR: JONATHAN B. SUTIN, Chief Judge and RODERICK T. KENNEDY, Judge.