**Certiorari Denied, December 3, 2009, No. 32,037**

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**Opinion Number: 2010-NMCA-004**

**Filing Date: September 4, 2009**

**Docket No. 28,651**

**CONNIE CALLAHAN, SALLY FISH,**
**and ANNE WATERS,**

Plaintiffs-Appellants,

**v.**

**NEW MEXICO FEDERATION OF**
**TEACHERS-TVI, ALBUQUERQUE TVI**
**FACULTY FEDERATION LOCAL NO. 4974**
**AFT, NMFT, and AMERICAN FEDERATION**
**OF TEACHERS,**

Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Linda M. Vanzi, District Judge**

Steven K. Sanders & Associates, L.L.C.
Steven K. Sanders
Albuquerque, NM

for Appellants

Law Office of Justin Lesky
Justin Lesky
Albuquerque, NM

for Appellees

**OPINION**

**SUTIN, Judge.**

**{1}** This case comes to us after a prior appeal and ultimately a decision by our Supreme Court reversing this Court in part, affirming this Court in part, and remanding to the district court for further proceedings. *See Callahan v. N.M. Fed'n of Teachers-TVI*, 2006-NMSC-010, ¶¶ 3, 29, 139 N.M. 201, 131 P.3d 51. The Supreme Court held that Plaintiffs Callahan, Fish, and Waters stated a claim against Defendant New Mexico Federation of Teachers-TVI (Union) for which relief could be granted for breach of the duty of fair representation. *Id.* ¶ 3. The Court also held that Plaintiffs stated a claim against Defendant American Federation of Teachers (International Union) based on averments that International Union did business in New Mexico as an exclusive bargaining agent for Plaintiffs under a collective bargaining agreement. *Id.*

**{2}** The primary issue in the district court on remand was whether the handling of Plaintiffs' grievances was perfunctory and therefore arbitrary, or was in bad faith. The district court entered summary judgments in favor of Union and International Union. As to the claims against Union, the district court determined that Plaintiffs did not show that Union engaged in the arbitrary, fraudulent, or bad faith conduct required to support their claim. As to International Union, the court also determined that Plaintiffs did not provide any evidence to show that it was party to the collective bargaining agreement or that it consulted with or advised Union with regard to Plaintiffs' grievances. We hold that a genuine issue of material fact exists as to whether Union's pursuit of Plaintiffs' grievances was arbitrary, including perfunctory, thus precluding summary judgment in favor of Union and requiring remand for trial on Plaintiffs' claims against Union. We also hold that summary judgment in favor of International Union was appropriate.

**BACKGROUND**

**{3}** A good deal of the factual background of this case is found in *Callahan*. *See id.* ¶¶ 1-7. Plaintiffs worked as full-time teachers at Albuquerque Technical Vocational Institute (TVI). TVI terminated the employment of Plaintiffs and several other teachers. Union agreed to represent Plaintiffs and the others in a grievance process. *Id.* ¶¶ 1, 5-6. An arbitrator determined that the grievances were arbitrable. *Id.* ¶¶ 1, 6. However, instead of pursuing Plaintiffs' grievances in arbitrations, Union entered into a settlement of the grievances. *Id.* ¶ 6. Plaintiffs were dissatisfied with the settlement, and they sued Union and International Union in district court. *Id.* ¶ 7.

**Defendants' Motion for Summary**
**Judgment on the Issue of Fair Representation**

**{4}** After setting out who the parties were and what the collective bargaining agreement stated in pertinent part, Defendants' motion for summary judgment in the district court stated that the following were "undisputed material facts": (1) TVI did not renew the employment contracts of eight employees, including Plaintiffs, or offer them new employment contracts; (2) Union filed a grievance on behalf of Plaintiffs seeking to overturn their terminations; (3) Union prevailed in an arbitration concerning arbitrability, and the matter was to proceed

2

to arbitration on the merits of the terminations; (4) Union reached a settlement with TVI and therefore did not participate in arbitrations relating to the merits of Plaintiffs' terminations; and (5) the settlement did not provide for full payment of back-wages and reinstatement of Plaintiffs to full-time instructor positions. Defendants' support for these assertions of undisputed facts were the complaint and the answer filed in the case.

**{5}** Following this recitation of undisputed material facts, the motion set out Defendants' argument supporting dismissal of Plaintiffs' claim for breach of the duty of fair representation. Defendants recited a number of other facts and attached a number of documents in support of their argument, but none of the facts recited or documents referred to in the argument was represented or shown to be or contained undisputed material facts on which Defendants' sought summary judgment.

**{6}** Defendants' main argument in their motion was that Union settled the grievances for three reasons. The first reason was that Union believed that the terms of the settlement were fair to all parties involved. Defendants explained that Union had to consider the interests of all eight grievants and the interests of the entire bargaining unit; that under the settlement four grievants, including one Plaintiff, were able to get their jobs back; that TVI contributed at least $75,000 in back-wages for eight individuals to divide among themselves, and the amount could have been $100,000 had all eight participated; and that the bargaining unit as a whole received beneficial language changes in the collective bargaining agreement, including the right not to be disciplined except for "just cause."

**{7}** The second reason was that Union's efforts and expenses on behalf of the grievants were "tremendous." The expenses included about $30,000 in attorney fees, arbitration expenses, as well as transcript and mediation expenses. Further, Union asserted in the motion that had it proceeded to arbitration on behalf of the grievants, it would have cost Union another $5000 to $10,000 per arbitration, and that process would either bankrupt Union or cause the rights of the bargaining unit as a whole to suffer.

**{8}** The third reason involved the uncertainty of the meaning of the collective bargaining agreement language stating that employees could not be terminated "unfairly" or "unjustly." Included in this reason were Defendants' statements that TVI was prepared to introduce evidence relating to the merits of the terminations and could have possibly prevailed. Also included was Defendants' view that with eight different arbitrations with possibly eight different arbitrators, the disciplinary standard would have been interpreted inconsistently and that this could have had a negative impact on the bargaining unit as a whole.

**{9}** Defendants also argued that one of Plaintiffs' claims of bad faith conduct on the part of Union was not supportable, and that Plaintiffs were adequately notified of the events leading up to the arbitration process, including the settlement negotiations. Defendants referred to a number of documents in support of this argument.

**DISCUSSION**

3

**{10}**     Plaintiffs appeal the summary judgments in favor of Union and International Union on Plaintiffs' claim for breach of the duty of fair representation arguing that there exists a genuine issue of material fact.  Plaintiffs also appeal the summary judgment in favor of International Union on its separate motion for summary judgment on the ground it played no consulting or advisory role in regard to the handling of Plaintiffs' grievances.

## I.     Standard of Review

**{11}**     "Our review of summary judgment is de novo.  Summary judgment is proper if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. We view the facts in a light most favorable to the party opposing the motion and draw all reasonable inferences in support of a trial on the merits." *Howse v. Roswell Indep. Sch. Dist.*, 2008-NMCA-095, ¶ 6, 144 N.M. 502, 188 P.3d 1253 (internal quotation marks and citations omitted).  To meet this burden, the non-moving party cannot rely on allegations contained in its complaint or upon argument or contention of counsel to defeat the motion; the party must come forward and establish with admissible evidence that a genuine issue of material fact exists.  *See Juneau v. Intel Corp.*, 2006-NMSC-002, ¶ 15, 139 N.M. 12, 127 P.3d 548 (filed 2005).  "Summary judgment should be denied where the facts support equally logical but conflicting inferences." *McNeill v. Rice Eng'g & Operating, Inc.*, 2003-NMCA-078, ¶ 12, 133 N.M. 804, 70 P.3d 794 (internal quotation marks and citation omitted).

## II.     Breach of the Duty of Fair Representation—The Law Generally

**{12}**     In *Jones v. International Union of Operating Engineers*, 72 N.M. 322, 330-32, 383 P.2d 571, 576-78 (1963), our Supreme Court held that a union member stated a claim for relief for breach of the duty of fair representation when he pleaded that the union had acted arbitrarily, in bad faith, and in violation of its trust when it refused to press the member's grievance to arbitration.  *See also Callahan*, 2006-NMSC-010, ¶¶ 9-10 (reiterating the holding in *Jones*).  "[T]he breach of duty of fair representation requires a showing of arbitrary, fraudulent, or bad faith conduct[.]" *Id.* ¶¶ 13-15; *see also Vaca v. Sipes*, 386 U.S. 171, 190 (1967) ("A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith.").  The claim for breach of the duty of fair representation cannot be premised upon mere negligence.  *See Callahan*, 2006-NMSC-010, ¶¶ 11, 15; *see also United Steelworkers of Am. v. Rawson*, 495 U.S. 362, 372-73 (1990) (stating that mere negligence will not state a claim for breach of the duty of fair representation); *Webb v. ABF Freight Sys., Inc.*, 155 F.3d 1230, 1240 (10th Cir. 1998) (stating that a union does not "violate[] its duty of fair representation by mere negligent conduct; carelessness or honest mistakes are not sufficient to impose liability on a union").

**{13}**     "[A] union may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion[.]" *Vaca*, 386 U.S. at 191; *see also Webb*, 155 F.3d at 1239-40 (stating that the prohibition against perfunctory conduct in *Vaca* remained the law despite the

4

omission of the word in *Air Line Pilots Ass'n, International v. O'Neill*, 499 U.S. 65, 67, 77 (1991), when quoting the "tripartite" duty from *Vaca* that "a union's actions may not be 'arbitrary, discriminatory, or in bad faith'"); *Young v. UAW Labor Employment & Training Corp.*, 95 F.3d 992, 996-98 (10th Cir. 1996) (quoting *Vaca*, 386 U.S. at 191, that "[a] union may not arbitrarily ignore a meritorious grievance or process it in [a] perfunctory fashion," and holding that the union did not process the grievances in a perfunctory manner (internal quotation marks omitted)).

## III. The Propriety of Summary Judgment on the Issue of Fair Representation

### A. The Parties' Arguments on Appeal

**{14}** Plaintiffs argue that the handling was perfunctory because Union failed to (1) investigate or otherwise learn the reasons Plaintiffs were fired, (2) discuss the reasons for the firings with Plaintiffs or obtain Plaintiffs' input, (3) give Plaintiffs notice and opportunity to participate in the grievance process, (4) examine Plaintiffs' personnel files and to thereby note their good evaluations and that they had not been disciplined, (5) invoke powers of arbitration to compel TVI to provide information, (6) obtain Plaintiffs' input before deciding to discontinue the arbitration process, (7) muster colorable arguments or refute insubstantial arguments of TVI, (8) evaluate the merits of Plaintiffs' grievances, and (9) interview witnesses who would support Plaintiffs' grievances. In addition, Plaintiffs assert that Union engaged in a "sham" arbitration process and discontinued the arbitration in bad faith to obtain some collateral advantage. Plaintiffs further assert that Union acted in bad faith when its representative supplied a false affidavit to TVI in support of TVI's position against Plaintiffs in a pending federal court case, when Union entered into a settlement with TVI that was unfavorable to Plaintiffs, and when Union forced Plaintiffs to accept a sham settlement. Lastly, Plaintiffs contend that Union wrongfully agreed to a clause in the settlement agreement that the grievances were filed in accordance with the collective bargaining agreement, in an effort to cover up its concern that it had failed to institute the grievances on a timely basis.

**{15}** Plaintiffs shower us with forty-two facts that are taken from their response to Defendants' summary judgment documents and that Plaintiffs consider material to the issues, but they separately set out in more detail and concentrate on certain deposition testimony in order to show evidence of a perfunctory performance by Union in representing them in the grievance process. This selected testimony as presented to us by Plaintiffs is as follows.

**{16}** Donna Swanson, president of Union, handled grievances and grievance training, and signed the settlement agreement with TVI. Swanson's first step in defending a grievance was to get the complete story including all documentation from both parties. This included getting witness statements and interviewing the employer's witnesses. However, Swanson did not find out the reasons for termination of Plaintiffs. Swanson stated that an essential element of due process of an employee considered for termination is being told what needs to be improved and allowed time to improve. Swanson knew Plaintiffs did not know the

5

reasons for their termination and that TVI had told them that it needed no reasons. During the grievance process, Swanson did not have access to Plaintiffs' personnel files and did not know if Plaintiffs had ever been reprimanded. TVI's president would not tell Swanson the reasons for any termination, and the TVI Board did not know the reasons.

{17} Further, neither Swanson nor Plaintiffs received any written documentation of the reasons for termination, and Swanson had only rumors and hearsay about Callahan and Waters, but had no information concerning Fish and did not receive any information from TVI concerning the reasons for Plaintiffs' dismissals. Swanson admitted that the collective bargaining agreement's procedural rights included the right of an employee to be told the reason for termination. After the question of arbitrability of the terminations was addressed, Swanson played a perfunctory role in advancing the grievances of all eight terminated employees. According to Swanson, Union made no evaluation of which of the eight employees would win or lose the arbitration. Swanson did not know how it was determined who would return to work.

{18} Another Union official, Paul Broome, who advocated on behalf of the employees at a mediation that led to the settlement agreement, stated that access to an employee's personnel file and all previous evaluations, administrative directives, disciplinary documents, as well as knowing the reasons for termination were necessary and important. Another Union official, John Ingram, stated that an employee needs notice of what he or she is doing wrong and needs an opportunity to correct it. Ingram, who spent twenty-five percent of his time handling grievances for Union, had been successful in grieving "any termination in which notice of wrong doing [was] not given."

{19} In sum, according to Plaintiffs, based on the foregoing facts "[t]here is simply a wealth of information that [Union and International Union] perfunctorily, arbitrarily[,] and in bad faith engaged in the grievance defense in this case and that there is a jury question on this matter."

{20} In their answer brief, Defendants go to lengths to dispute the accuracy and materiality of many of the facts Plaintiffs recite in their brief in chief. In their argument, Defendants reiterate the arguments they set out in their motion for summary judgment, which primarily consisted of the three reasons they settled Plaintiffs' grievances and pending arbitrations. In addition, Defendants attempt to meet the arguments that Plaintiffs set forth in their brief in chief. To support the favorable summary judgment, Defendants rely heavily on prevailing case law that requires careful scrutiny of such claims and sets high deferential standards when reviewing a union's decision not to take a grievant's claims to arbitration. We set this formidable case law out here, although we ultimately determine that that law does not save Defendants' summary judgment in this case on the issue for breach of the duty of fair representation.

{21} "The final product of the bargaining process may constitute evidence of a breach of the fair representation duty only if, in light of the factual and legal landscape, it can be fairly

characterized as so far outside of a wide range of reasonableness, that it is wholly irrational or arbitrary." *Air Line Pilots Ass'n, Int'l*, 499 U.S. at 66 (internal quotation marks and citation omitted). A court's review of a union's performance is "highly deferential." *Id.*; *see also Trnka v. Local Union No. 688*, 30 F.3d 60, 61 (7th Cir. 1994) (stating that a "wide degree of deference is warranted" and that this is an "extremely deferential standard" (internal quotation marks and citation omitted)). Courts will not substitute their own "judgment for that of the union, even if, with the benefit of hindsight, it appears that the union could have made a better call." *Garcia v. Zenith Elecs. Corp.*, 58 F.3d 1171, 1176 (7th Cir. 1995) (internal quotation marks and citation omitted). The union's decision must be "so far outside a wide range of reasonableness" as to be irrational. *Ooley v. Schwitzer Div., Household Mfg. Inc.*, 961 F.2d 1293, 1302 (7th Cir. 1992) (internal quotation marks and citation omitted); *see also Howse*, 2008-NMCA-095, ¶ 8 ("A union's conduct can be classified as arbitrary only when it is irrational, when it is without a rational basis or explanation." (internal quotation marks and citation omitted)). "[A] union does not breach its duty of fair representation . . . merely because it settled the grievance short of arbitration." *Vaca*, 386 U.S. at 192.

## B.     The District Court's Analyses

**{22}**    In regard to the issue of perfunctory handling of the grievance, the district court correctly rejected the notion that Plaintiffs' claim could be premised on negligence, noting *Callahan*'s admonition that "a court should only interfere with a union's decision not to present an employee's grievance in extreme cases." *Callahan*, 2006-NMSC-010, ¶ 11. Quoting *Webb*, 155 F.3d at 1240, the district court determined that for Union to have acted in a perfunctory fashion, it would have had to have acted "without concern or solicitude, or [to have given] a claim only cursory attention." (Internal quotation marks and citation omitted.) The court was guided by *Callahan*'s statements that "a union member does not have an absolute right to have his [or her] grievance taken to arbitration," and that "a union does not breach its duty of fair representation merely by settling an employee's grievance short of arbitration; the union's refusal or failure to take the grievance to arbitration has to be arbitrary, discriminatory[,] or in bad faith." *Callahan*, 2006-NMSC-010, ¶ 13 (alteration in original). The court was further guided by *Howse* in which this Court stated that "[a]bsent justification or excuse, a union's negligent failure to take a basic and required step . . . is a clear example of arbitrary and perfunctory conduct." *Howse*, 2008-NMCA-095, ¶ 8. In addition, the district court noted that the amount and thoroughness of investigation required of a union to meet its duty of fair representation depended on the circumstances of each case. *See Webb*, 155 F.3d at 1241; *Garcia*, 58 F.3d at 1176. And the court noted from *Garcia* the view that "only an egregious disregard for union members' rights constitutes a breach of the union's duty." 58 F.3d at 1176 (internal quotation marks and citation omitted). Based on the foregoing principles and its analysis of Plaintiffs' facts and claims, the district court determined that "Plaintiffs [failed to] come forward with sufficient evidence to create a fact issue regarding whether their termination grievances were handled in a perfunctory manner."

7

**{23}** The court indicated that Union presented several reasons why the settlement as to all grievants was fair, including the following facts. Union expended considerable resources in the arbitration process, and Union was concerned about the rights of the bargaining unit as a whole and was concerned that the unit would have suffered had Union pursued the individual grievances through a full arbitration. There was no guarantee that the terminated employees would have prevailed in the arbitration. The collective bargaining agreement did not provide that the employees could be terminated only for just cause but, instead, the test was whether they were terminated "unfairly" or "unjustly." It did not appear from the collective bargaining agreement that TVI was required under the circumstances to provide the basis for its failure to renew Plaintiffs' contracts. "[U]nion attempted to collect information about the terminations, but . . . TVI hamstrung its efforts to do so." Union attempted to contact Callahan and Fish to discuss the possibility of entering into a settlement agreement before the agreement was reached and apparently received no response. And "Union was unsure of the legal footing upon which the grievances were based[.]" In addition, Union showed that four of the eight terminated employees got their jobs back in the settlement. Granting Union's motion for summary judgment, the court concluded:

> In this case, it is evident . . . Union took many circumstances into account in deciding to settle the grievances. There is evidence that more favorable terms were procured as a result of the global nature of the settlement and . . . Union's ability to negotiate collectively on behalf of all eight employees. Thus, even if the three Plaintiffs had vehemently opposed the settlement agreement, . . . Union did not exercise "an egregious disregard" for the rights of its members. On the contrary, the evidence shows . . . Union was trying to protect the rights of the largest number of members it could. A reasonable jury could not find for Plaintiffs on their claim.

**{24}** The district court appears to have been satisfied that Union had no duty to pursue the reasons for termination or to evaluate the merits of the grievances once they asked TVI for the reasons and TVI declined. In its decision, the district court did not analyze whether there existed a genuine issue of material fact as to whether Union breached its duty by failing to further pursue reasons for the terminations, to discuss the reasons with Plaintiffs, and to evaluate the merits of Plaintiffs' grievances. The court was satisfied that "[a] reasonable jury could not find for Plaintiffs on their claim." It appears that the court may not have held close to the summary-judgment standard. Yet, as we explain later in this opinion, to the extent it may have, we disagree with the court's analyses and entry of summary judgment on Plaintiffs' claim for breach of the duty of fair representation.

## C.     The Issue, as Focused in Oral Argument, Favors Plaintiffs

**{25}** It became clear in oral argument that Plaintiffs' primary and critical point was that Union's handling of the grievances was necessarily perfunctory and therefore arbitrary, because Union made its decision to settle with TVI without knowing the reasons why Plaintiffs were terminated. Thus, Union never evaluated the merits of their grievances.

Further, Plaintiffs complain that any information Union may claim it received during the mediation process was neither documented nor transmitted to Plaintiffs, and Plaintiffs never had an opportunity to rebut any statements TVI might have made for the terminations. Plaintiffs acknowledge the case-law standards relating to claims for breach of the duty of fair representation and the high deference given to union decisions not to take a grievance to arbitration. However, Plaintiffs contend that these standards are not applicable to their grievances. In Plaintiffs' view, the standards cannot be applied where a union has not had and taken the opportunity to analyze the reasons why an employee is terminated, has not discussed the reasons and evaluation with the employee, has not evaluated whether the termination was proper, and has not evaluated the merits of the grievances and made a reasoned decision whether to settle or to proceed to arbitration. Only after the foregoing processes and decision, Plaintiffs contend, is a union decision not to proceed to arbitration to be given deference and the high case-law standards to be applied. Plaintiffs further contend that Union cannot use as an excuse that TVI refused to give Union any documents showing the reason for the terminations or to informally pass that information on to Union, because under that circumstance Union should have proceeded to arbitration to at the very least obtain the reasons.

**{26}** Union responded two ways in oral argument. First, Union argued that the record contained undisputed facts showing that in the mediation process Union was given reasons for terminations. Union pointed to portions of depositions that it represented contained those undisputed facts. Second, Union argued that more important considerations were at stake than knowing and evaluating the reasons for the terminations or having concern for the individual grievances. Union argued that most important were the considerations that Union was a small union, that eight full arbitrations would be very expensive, that the termination language in the collective bargaining agreement was unclear, that Union was able to get four of the eight grievants reinstated, that it was able to get better termination language in the collective bargaining unit, and that, all in all, the interests of the entire bargaining unit were enhanced. Based on these considerations, Union argued, the summary judgment was proper because the foregoing facts demonstrated that the decision of Union to settle was not irrational.

**{27}** We agree with Plaintiffs' argument and reject that of Union. We are not prepared to apply the high deferential and other standards on the question of a breach of the duty of fair representation to affirm the summary judgment in favor of Union, where Union did not, before scuttling arbitration, fully pursue, obtain, and evaluate the reasons why the grievants were terminated. The case-law protection given a union's decision making in the grievance process is not an impenetrable shield—*i.e.*, a union's discretion in that process is not unlimited. *See Granberry v. Albuquerque Police Officers Ass'n*, 2008-NMCA-094, ¶ 8, 144 N.M. 595, 189 P.3d 1217 ("While we are mindful of the general policy of deference to union decision making, we note that a union's discretion on whether to represent a member's complaint is not unlimited."). We are persuaded it was for the jury to evaluate whether Union had and breached a duty to investigate, to pursue, obtain, and evaluate the reasons for the termination, and then to evaluate the merits of the grievances relating to the employees'

9

termination, before settling the grievances as it did. *Cf. Norton v. Adair County*, 441 N.W.2d 347, 356-57 (Iowa 1989) (discussing a union's duty to investigate the merits of a grievance). Plaintiffs presented facts showing that Union by-passed the issue of the propriety of the terminations based on TVI's refusal to show Union any documentation regarding the terminations and that Union failed to further pursue that information and then evaluate the reasons for the terminations, including obtaining the grievants' sides of the story. Plaintiffs showed that Union decided to settle solely on matters independent of the merits of the grievances. Plaintiffs contend that Union thereby arbitrarily ignored their grievances and perfunctorily processed the grievances and that Union's decision to settle and not arbitrate was therefore arbitrary and not entitled to deference.

**{28}** We have reviewed the record and, contrary to Union's representation during oral argument, it is not undisputed whether Union received from TVI any particular information regarding reasons for the terminations. There is nothing to reflect that Union was given or even shown any documentation in that regard. In addition, we find nothing in the record showing undisputed facts that Union discussed any reasons for termination with Plaintiffs or ever evaluated any reasons for termination and the merits of the grievances when considering whether to settle or proceed with arbitration.

**{29}** We think it is also important to note, as we discussed earlier in this opinion, that Union's motion for summary judgment was based on undisputed facts that were not particularly material to the issue of whether Union breached its duty of fair representation due to arbitrary, perfunctory conduct. None of the facts presented in its motion as undisputed facts included any facts relating to the reasons for Plaintiffs' terminations, and none included any facts relied on by Defendants as reasons Union entered into the settlement with TVI. While in their motion, Defendants argued reasons why it settled and did not proceed to arbitration, the facts purportedly supporting that decision were not shown to be undisputed facts. In response, Plaintiffs presented facts showing that Union made its decision without knowing the reasons for termination, without discussing any reasons with Plaintiffs, and without evaluating the merits of the grievances. Defendants were not able in oral argument to show through undisputed evidence that it did know reasons. To the extent that any aspect of Defendants' showing might arguably be construed to support Union's knowledge of reasons, the showing does nothing more than create an issue of material fact, barring their right to summary judgment.

**{30}** Defendants' reasons for settling the grievances and not proceeding to arbitration might have supported summary judgment by showing that its actions were not arbitrary or perfunctory had Union also evaluated the reasons for the terminations, as well as the merits of the grievances, and had it entered those considerations into the decision-making mix. But the merits of the grievances were omitted from the mix. And for that reason, Plaintiffs established that a genuine issue of material fact existed in regard to the breach of the duty of fair representation, precluding summary judgment on Plaintiffs' claims. "[W]here a union acts or fails to act to the detriment of a member's complaint, it must offer a rational basis or explanation for its actions." *Granberry*, 2008-NMCA-094, ¶ 8. When "an issue of fact

10

remains on the question of [a union's] rationale for not pursuing [a] grievance, we must reverse the court's grant of summary judgment." *Howse*, 2008-NMCA-095, ¶ 11.

## IV.    Plaintiffs' Point Relating to Unverified Interrogatory Answers

**{31}**    Defendants relied on answers Union made to Plaintiffs' interrogatories and attached those answers as an exhibit to their summary judgment documents. When first provided, no verification was attached to the interrogatory answers. Defendants later supplied a verification signed by Swanson. Plaintiffs moved to strike the interrogatory answers on the grounds of the initial lack of verification and of the failure of Swanson to show that she had personal knowledge of the facts stated in the answers, as required under Rule 1-056(E) NMRA. Because we reverse the summary judgment granted to Defendants on the issue of fair representation, we need not address this issue.

## V.    Plaintiffs' Point on Error Relating to Granting
## Summary Judgment Dismissing International Union

**{32}**    In regard to International Union, the court determined that Plaintiffs did not meet their burden of showing that International Union "played any sort of active role" in the case. The court pointed out that none of the witnesses who testified on the issue stated that they had consulted with or received advice from International Union and that no discovery supported Plaintiffs' claim against International Union.

**{33}**    Plaintiffs assert that in *Callahan* our Supreme Court held that "International Union would be liable if it was a party to the [collective bargaining agreement] or if it participated in the decision to drop the grievance." Plaintiffs point to the following language in *Callahan*:

> A general rule is that an international union cannot be sued for breach of the duty of fair representation where the international union is not designated as an exclusive representative in a collective bargaining agreement. In addition, an international union cannot be sued for breach of the duty of fair representation if the international union has not played a role in consulting with or advising either the employee or the local union.

*Callahan*, 2006-NMSC-010, ¶ 27 (citations omitted). Based on this language, Plaintiffs argue that summary judgment was improper because International Union did not file an affidavit addressing either its participation or its lack of participation in the decision to drop the grievances.

**{34}**    *Callahan* reviewed Plaintiffs' complaint averments that International Union did business in New Mexico, by contract was the exclusive representative for Plaintiffs, and was a party to the collective bargaining agreement. *Id*. ¶ 28. Based on those averments, the Court determined that Plaintiffs pled facts sufficient to defeat a Rule 1-012(B)(6) NMRA

11

motion to dismiss. *Id.* In the summary judgment proceedings, International Union supplied sufficient facts to show it was neither the exclusive representative for Plaintiffs nor a party to the collective bargaining agreement. It was not the burden of International Union to provide further facts attempting to show that it played no role in consulting with or advising Union. International Union made a prima facie showing for entitlement of summary judgment, and this switched the burden to Plaintiffs to create a genuine issue of material fact. *See Johnstone v. City of Albuquerque*, 2006-NMCA-119, ¶ 5, 140 N.M. 596, 145 P.3d 76. Plaintiffs have not shown how they satisfied that burden. Thus, the district court did not err in granting summary judgment in favor of International Union.

**VI.  Defendants' Point That Plaintiffs' Claims Are Barred by the Statute of Limitations and the District Court's Summary Judgment Was Right for That Reason**

**{35}**  Defendants filed a motion on May 2, 2008, to dismiss on statute of limitations grounds. The district court's decision on the merits of this case that was filed ten days later did not contain a ruling on the motion to dismiss. Defendants argue that this Court should, at the very least, affirm the summary judgment relating to the duty of fair representation on the ground that Plaintiffs' claims are barred by the two-year statute of limitations in NMSA 1978, Section 37-1-23(B) (1976), which covers "hybrid claims" and according to Defendants, bars the present hybrid contract action against a state employer. *See Howse*, 2008-NMCA-095, ¶ 21. We leave this issue for the district court on remand.

**CONCLUSION**

**{36}**  We reverse the summary judgment entered in favor of Defendants on the issue of breach of Union's duty of fair representation. We affirm the summary judgment in favor of International Union. This matter is remanded to the district court for further proceedings in accordance with this opinion.

**{37}  IT IS SO ORDERED.**

_____
**JONATHAN B. SUTIN, Judge**

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

_____

12

**MICHAEL D. BUSTAMANTE, Judge**

**Topic Index for *Callahan v. NM Federation of Teachers-TVI*, No. 28,651**

| | |
|---|---|
| **CN** | **CONTRACTS** |
| CN-BR | Breach |
| | |
| **CP** | **CIVIL PROCEDURE** |
| CP-PL | Pleadings |
| CP-SJ | Summary Judgment |
| | |
| **EL** | **EMPLOYMENT LAW** |
| EL-CB | Collective Bargaining |
| EL-DE | Duties of Employee and Employer |
| EL-GR | Employee Grievances |
| EL-LU | Labor Unions |
| EL-RD | Reinstatement and Damages |
| EL-TE | Termination of Employment |